802 So.2d 207 (2001)
Robert W. BUTLER et al.
v.
ALABAMA JUDICIAL INQUIRY COMMISSION et al.
1001119.
Supreme Court of Alabama.
May 15, 2001.
*210 James C. Barton, Robert S. Vance, Jr., R. Marcus Givhan, and Charles A. Powell III of Johnston, Barton, Proctor & Powell, L.L.P., Birmingham, for the Alabama Judicial Inquiry Commission and its members.
William J. Baxley of Baxley, Dillard, Dauphin & McKnight, Birmingham; and Larry B. Childs and Randall D. Quarles of Walston, Wells, Anderson & Bains, L.L.P., Birmingham, for Robert Butler, W. Thomas Gaither, and Harold F. See.
Harold Hampton Boles, Michael L. Edwards, Matthew C. McDonald, Clifford Lee Reeves, Henry E. Simpson, N. Lee Cooper, Warren B. Lightfoot, Crawford S. McGivaren, James W. Gewin, W. Stancil Starnes, and M. Roland Nachman, for amici curiae certain practicing attorneys in the State of Alabama.
BROWN, Justice.
This case is before this Court on three certified questions from the United States Court of Appeals for the Eleventh Circuit.
In the primary election held in June 2000, Justice Harold F. See, Jr., an Associate Justice of the Supreme Court of Alabama, sought the nomination of the Republican party for the office of Chief Justice of the Supreme Court of Alabama. As part of his political campaign, Justice See made comments about the record of another candidate in the primary election, Judge Roy Moore. Thereafter, the Alabama Judicial Inquiry Commission ("JIC") received a complaint that Justice See's comments pertaining to Judge Moore's record of sentencing in drug cases violated Canon 7B.(2) and Canon 2A. of the Alabama Canons of Judicial Ethics.
The Alabama Canons of Judicial Ethics, which are promulgated and adopted by the Supreme Court of Alabama pursuant to its authority under the Alabama Constitution,[1] govern the character and conduct of judges in the State of Alabama and have the force and effect of law. The Alabama Constitution vests enforcement of the Alabama Canons of Judicial Ethics in the JIC. See Ala. Const. of 1901, Amendment No. 581, §§ 6.17 and 6.18. If the JIC determines that a reasonable basis exists for a finding of an ethics violation, the JIC may file a complaint with the Court of the Judiciary ("COJ"). See Ala. Const. of 1901, Amendment No. 581, § 6.17(b). The COJ convenes to hear complaints filed by the JIC and has the "authority, after notice and public hearing ... to remove from office, suspend without pay, or censure a judge, or apply such other sanction as may [be] prescribed by law, for a violation of a Canon of Judicial Ethics." See Ala. Const. of 1901, Amendment No. 581, § 6.18(a). Once the JIC has filed a complaint, a charged judge is prohibited by Ala. Const. of 1901, Amendment No. 328, § 6.19, from serving as a judge until final resolution of the complaint by the COJ.
*211 On July 21, 2000, upon finding that a reasonable basis existed to charge Justice See with an ethics violation, the JIC filed a three-count complaint against Justice See with the COJ. That complaint alleged that, through his campaign advertisements, Justice See had violated Canon 7B.(2) and Canon 2A. of the Alabama Canons of Judicial Ethics.
Count 1 of the JIC's complaint specifically alleged that, during his judicial campaign, Justice See distributed "false information" about Judge Moore "either knowing the information to be false or with reckless disregard of whether that information was false," in violation of Canon 7B.(2). Count 2 alleged that Justice See, "in the course of a judicial campaign," disseminated "information" about Judge Moore "knowing that the information would be deceiving or misleading to a reasonable person," in violation of Canon 7B.(2). Count 3 alleged that, "in the course of a judicial campaign," Justice See "failed to respect and comply with the law and to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary," in violation of Canon 2A. More specifically, Count 3 alleged that Justice See violated Canon 2A. when he, "through his campaign spokesperson, criticized Moore's conduct in not explaining his sentences when an explanation by Moore would have been in violation of Canon 3A(6)."
Pursuant to Ala. Const. of 1901, Amendment No. 328, § 6.19, Justice See was immediately disqualified from judicial duty on the Supreme Court of Alabama, pending the COJ's resolution of the complaint filed by the JIC. On July 24, 2000 (three days after the JIC filed its complaint), Justice See responded by bringing an action against the JIC in the United States District Court for the Middle District of Alabama,[2] claiming that Canon 7B.(2) and Canon 2A., both facially and as applied, violated his rights protected under the First Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment. Justice See also sought a temporary restraining order ("TRO") and a preliminary injunction to prevent enforcement of the Canons against him and to return him to active duty on the Supreme Court of Alabama. The JIC filed a motion to dismiss Justice See's action in the district court, contending that the federal court should abstain from enjoining the state-court proceeding against Justice See based on the dictates of 28 U.S.C. § 2283 ("the Anti-Injunction Act") and the Younger Abstention Doctrine.[3]
In orders entered on July 28, 2000, and on August 3, 2000, the district court denied the JIC's motion to dismiss and granted the TRO and the preliminary injunction sought by Justice See. Butler v. Alabama Judicial Inquiry Comm'n, 111 F.Supp.2d 1224 (M.D.Ala.2000); and Butler v. Alabama Judicial Inquiry Comm'n, 111 F.Supp.2d 1241 (M.D.Ala.2000). Upon finding that there was a substantial likelihood that Justice See would ultimately prevail on his claim that Canon 7B.(2) and Canon 2A. violated his rights protected under the First Amendment, the district *212 court enjoined the JIC from enforcing the canons and from prosecuting the complaint against Justice See. Id. In addition, the district court prevented the JIC from interfering with Justice See's performance of his judicial duties on the Supreme Court of Alabama.
The JIC then appealed to the United States Court of Appeals for the Eleventh Circuit, arguing that the federal courts should abstain from interfering with the ongoing state proceedings against Justice See (i.e., those in the COJ), and that any federal proceedings on the merits of Justice See's federal constitutional claims should be terminated by application of Younger abstention principles. Stating that it could "properly intervene in a state judicial proceeding only when we are convinced that the state forum is inadequate and [that] we are, for now, uncertain about the adequacy of the state forum for Justice See's federal constitutional challenges," the court of appeals certified the following questions to this Court:
"A. IN A PROCEEDING BEFORE THE ALABAMA COURT OF THE JUDICIARY, CAN A DEFENDANT RAISE AND HAVE DECIDED A CONSTITUTIONAL CHALLENGE TO A JUDICIAL CANON, EITHER AT THE COURT OF THE JUDICIARY OR THROUGH DIRECT REVIEW TO THE SUPREME COURT OR BY OTHER MEANS?
"B. IF SO, HOW DO THE PROCEDURAL RULES GOVERNING THE COURT OF THE JUDICIARY PERMIT A REASONABLY SPEEDY DECISION ON FEDERAL CONSTITUTIONAL ISSUES?
"C. IN A PROCEEDING BEFORE THE ALABAMA COURT OF THE JUDICIARY, CAN THAT COURT OR A HIGHER COURT GRANT, IN THAT PROCEEDING, A STAY OF THE JUDGE'S DISQUALIFICATION PENDING THE OUTCOME OF THAT PROCEEDING OR THE OUTCOME OF THE FEDERAL CONSTITUTIONAL CHALLENGE POSED IN THAT PROCEEDING?"
Butler v. Alabama Judicial Inquiry Comm'n, 245 F.3d 1257, 1265-66 (11th Cir. 2001).[4]
In addition to certifying the three questions, the court of appeals invited this Court to address the question whether Canon 7B.(2) and Canon 2A. violate the First Amendment guarantee of free speech and to remedy federal constitutional defects, if any, we may find in the canons. In footnote 9 of its order, the court of appeals stated:
"We observe that because the Alabama Supreme Court adopted the judicial canons at issue here, the court may also be able to remedy federal constitutional defects, if any, that it may find in the judicial canons challenged by Justice See. Our certification to the Alabama Supreme Court does not preclude this activity. See Pogue v. Oglethorpe Power Corp., 82 F.3d 1012, 1017 (11th Cir. *213 1996) (certification `offer[s] the state court the opportunity to interpret or change existing law.')."
Butler v. Alabama Judicial Inquiry Commission, 245 F.3d at 1266 n. 9. Because of our answer to the question concerning the federal constitutional defects of Canon 7B.(2) and Canon 2A., we deem the certified questions A. and B. to be moot and we decline to answer certified question C. Our discussion of the constitutionality of the canons follows.

1. Constitutionality of Canon 7B.(2)

Canon 7B.(2) of the Alabama Canons of Judicial Ethics provides as follows:

"Campaign Communications. During the course of any campaign for nomination or election to judicial office, a candidate shall not, by any means, do any of the following:
"Post, publish, broadcast, transmit, circulate, or distribute false information concerning a judicial candidate or an opponent, either knowing the information to be false or with reckless disregard of whether the information is false; or post, publish, broadcast, transmit, circulate, or distribute true information about a judicial candidate or an opponent that would be deceiving or misleading to a reasonable person."
Justice See raises a First Amendment facial challenge to Canon 7B.(2), asserting that that Canon is overbroad and that, as a result, it chills First Amendment speech. After careful consideration of this issue, we conclude that Canon 7B.(2) is indeed facially unconstitutional because it violates the overbreadth doctrine.
"An overbreadth challenge is based on the statute's `possible direct and indirect burdens on speech.'" United States v. Acheson, 195 F.3d 645, 650 (11th Cir.1999) (quoting American Booksellers v. Webb, 919 F.2d 1493, 1499-500 (11th Cir. 1990)). The overbreadth doctrine "permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." City of Chicago v. Morales, 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612-15, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). The doctrine "`protects the public from the chilling effect such a statute has on protected speech; the court will strike down the statute even though in the case before the court the governmental entity enforced the statute against those engaged in unprotected activities.'" Acheson, 195 F.3d at 650 (quoting Nationalist Movement v. City of Cumming, 934 F.2d 1482, 1485 (11th Cir.1991) (Tjoflat, J., dissenting)).
In New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court stated the following with regard to the First Amendment's protection of freedom of speech:
"The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard, we have said, `was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498. `The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system.' *214 Stromberg v. California, 283 U.S. 359, 369, 51 S.Ct. 532, 75 L.Ed. 1117. `[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions,' Bridges v. California, 314 U.S. 252, 270, 62 S.Ct. 190, 86 L.Ed. 192, and this opportunity is to be afforded for `vigorous advocacy' no less than `abstract discussion.' N.A.A.C.P. v. Button, 371 U.S. 415, 429, 83 S.Ct. 328, 9 L.Ed.2d 405. The First Amendment, said Judge Learned Hand, `presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be, folly; but we have staked upon it our all.' United States v. Associated Press, 52 F.Supp. 362, 372 (S.D.N.Y.1943)."
Id. at 270-71, 84 S.Ct. 710.
Discussing the First Amendment in the context of elections, the Supreme Court stated in Brown v. Hartlage, 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982):
"At the core of the First Amendment are certain basic conceptions about the manner in which political discussion in a representative democracy should proceed. As we noted in Mills v. Alabama, 384 U.S. 214, 218-19, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966):
"`Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes.'
"The free exchange of ideas provides special vitality to the process traditionally at the heart of American constitutional democracythe political campaign. `[I]f it be conceded that the First Amendment was "fashioned to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people," then it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office.' Monitor Patriot Co. v. Roy, 401 U.S. 265, 271-72[, 91 S.Ct. 621, 28 L.Ed.2d 35] (1971) (citation omitted). The political candidate does not lose the protection of the First Amendment when he declares himself for public office. Quite to the contrary:
"`The candidate, no less than any other person, has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates. Indeed, it is of particular importance that candidates have the unfettered opportunity to make their views known so that the electorate may intelligently evaluate the candidates' personal qualities and their positions on vital public issues before choosing among them on election day. Mr. Justice Brandeis' observation that in our country "public discussion is a political duty," Whitney v. California, 274 U.S. 357, 375, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (concurring opinion), applies with special force to candidates for public office.' Buckley v. Valeo, 424 U.S. 1, 52-53, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam)."
456 U.S. at 52-53, 102 S.Ct. 1523.
The people of Alabama have chosen to select their judges in partisan, contested *215 elections. So long as this is the case, it is essential that judicial candidates have "the unfettered opportunity to make their views known," so that voters may intelligently evaluate the candidates' positions on issues of vital public importance. Thus, the political speech of judicial candidates in this state must be guaranteed the fullest application of the First Amendment's protections.
Because Canon 7B.(2) restricts political expression that "occupies the core of the protection afforded by the First Amendment," McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 347, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995), this Court will apply "the most exacting scrutiny" when analyzing the Canon's constitutionality. Id.; see also Brown, 456 U.S. at 53-54, 102 S.Ct. 1523. When "a State seeks to restrict directly the offer of ideas by a candidate to the voters, the First Amendment surely requires that the restriction be demonstrably supported by not only a legitimate interest, but a compelling one, and that the restriction operate without unnecessarily circumscribing protected expression." Brown, 456 U.S. at 53-54, 102 S.Ct. 1523. Accordingly, we will uphold the Canon only if it is narrowly tailored to serve a compelling state interest. McIntyre, 514 U.S. at 349, 115 S.Ct. 1511; Brown, 456 U.S. at 53-54, 102 S.Ct. 1523; see also Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).
False statements, when made during political campaigns, "may have serious adverse consequences for the public at large." McIntyre, 514 U.S. at 347, 115 S.Ct. 1511. Moreover, there appears to be little dispute that preservation of the reputation and integrity of the judiciary is a compelling state interest. See Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 848, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) ("There could hardly be a higher governmental interest than a State's interest in the quality of its judiciary.") (Stewart, J., concurring in the result). Thus, with regard to Canon 7B.(2), we conclude that the State of Alabama has a compelling interest in protecting the integrity of the judiciary. However, we further conclude that Canon 7B.(2) is unconstitutionally overbroad on its face because it is not narrowly tailored to serve that compelling state interest.
In so concluding, we find persuasive the reasoning expressed by the Supreme Court of Michigan in In re Chmura, 461 Mich. 517, 608 N.W.2d 31 (2000). There, the court considered whether Canon 7(B)(1)(d) of the Michigan Code of Judicial Conduct could withstand First Amendment scrutiny. That canon provided that candidates for judicial office
"should not use or participate in the use of any form of public communication that the candidate knows or reasonably should know is false, fraudulent, misleading, deceptive, or which contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading, or which is likely to create an unjustified expectation about results the candidate can achieve."
Applying strict scrutiny and recognizing that the canon was intended to promote civility in campaigns for judicial office, the court nevertheless held that the canon was "facially unconstitutional because it [was] not narrowly tailored to serve the state's compelling interest in maintaining the integrity of the election process and ensuring public confidence in the judiciary." Chmura, 461 Mich. at 529-30, 608 N.W.2d at 38. Relying in part on the reasoning of the United States Supreme Court in Brown, supra, 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732, the Chmura court stated:

*216 "In Brown ..., the Supreme Court considered a Kentucky statute that voided an election because the victorious candidate had announced during his campaign that he intended to serve at a salary less than that fixed by law. The Court rejected the state's argument that its interest in protecting the political process from distortions caused by false or inaccurate statements justified the sanction. The Court concluded that, absent a showing that the candidate made the disputed statement other than in good faith and with knowledge of its falsity, or that he made it with reckless disregard of its falsity, the sanction `was inconsistent with the atmosphere of robust political debate protected by the First Amendment.'"
Chmura, 461 Mich. at 535-36, 608 N.W.2d at 40-41 (quoting Brown, 456 U.S. at 62, 102 S.Ct. 1523).
In finding Canon 7(B)(1)(d) of the Michigan Code of Judicial Conduct facially unconstitutional in Chmura, the Michigan Supreme Court explained:
"Canon 7(B)(1)(d) attaches adverse consequences to a candidate's statements that are not knowingly false or made with reckless disregard for truth or falsity. The canon applies to any statement that the candidate `reasonably should know is false, fraudulent, misleading, [or] deceptive.' It also applies to a statement that `contains a material misrepresentation of fact or law,' and a statement that `omits a fact necessary to make the statement considered as a whole not materially misleading.' It further prohibits a statement that is `likely to create an unjustified expectation about results the candidate can achieve.'
". . . .
"Canon 7(B)(1)(d) greatly chills debate regarding the qualifications of candidates for judicial office. It applies to all statements, not merely those statements that bear on the impartiality of the judiciary. A candidate for judicial office faces adverse consequences for statements that are not false, but, rather, are found misleading or deceptive. Further, the canon extends beyond the candidate's actual statement to permit discipline for factual omissions. Faced with the prospect of future disciplinary action, a candidate's safest course may sometimes be to remain silent on many issues."
461 Mich. at 536-40, 608 N.W.2d at 41-42. The Michigan Supreme Court held that the only constitutional portion of Canon 7(B)(1)(d) was its proscription against knowingly false statements or statements made with reckless disregard of their falsity.
This Court, too, has recognized that misrepresentations in a political context "must be shown to have been made with knowledge of their falsity or with reckless disregard of the truth. Otherwise, there would be a danger of chilling the exercise of protected speech, because while an erroneous statement is not worthy of constitutional protection, it is nevertheless inevitable in free debate. An innocent misstatement will not be grounds for punishment." Dowling v. Alabama State Bar, 539 So.2d 149, 152 (Ala.1988) (citing New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); and Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)).
In addition to Alabama, only three other statesMichigan, Georgia, and Ohio have enacted broad restrictions on the kind of statements a judicial candidate may make during an election campaign. See Chmura, 461 Mich. at 529 n. 6, 608 N.W.2d at 37 n. 6. As we have indicated, in Chmura the Michigan Supreme Court *217 found Canon 7(B)(1)(d) of the Michigan Code of Judicial Conduct to be facially unconstitutional. In Weaver v. Bonner, 114 F.Supp.2d 1337 (N.D.Ga.2000), the federal district court found Georgia's judicial-election canon to violate the overbreadth doctrine because the canon failed to provide the "necessary `breathing space' to survive First Amendment scrutiny." 114 F.Supp.2d at 1342. Like Canon 7B.(2) of the Alabama Canons of Judicial Ethics (and like the Michigan canon in Chmura), the Georgia canon not only prohibited false statements knowingly made, but also "chill[ed] debate by requiring candidates to attempt to determine whether a reasonable person would view their speech as fraudulent, misleading or somehow deceptive. It, therefore, [had] a great likelihood of forcing candidates to remain silent on questionable matters instead of risking adverse action." Id. at 1342-43.
In concluding that Canon 7B.(2) is unconstitutionally overbroad on its face, not only are we persuaded by the reasoning expressed in Chmura and Weaver, but we are further persuaded by the reasoning expressed in Butler v. Alabama Judicial Inquiry Comm'n, 111 F.Supp.2d 1224 (M.D.Ala.2000), where the United States District Court, in granting the TRO and the preliminary injunction sought by Justice See, found that there was a substantial likelihood that Justice See would ultimately prevail on his claim that Canon 7B.(2) and Canon 2A. violated his rights protected under the First Amendment. We quote in part from the district court's discussion of Canon 7B.(2):
"In this case, the court finds that the canon at issue, i.e., Canon 7(B)(2), appears to be more far-reaching thanor at least on the same par withthe canon held unconstitutional in Chmura and the statute examined in Brown, supra. As in Chmura and Brown, Canon 7(B)(2) of the Alabama Canons of Judicial Ethics extends beyond those statements that are false or made with knowledge of their falsity to speech that a `reasonable person' would deem `deceiving or misleading.' The `deceiving or misleading' clause of Canon 7(B)(2) neither takes into account the candidate's intent nor does it contain a falsity requirement. Therefore, if a `reasonable person' would deem `true information' either `deceiving or misleading,' the candidate violates Canon 7(B)(2) and, thus, is subject to being charged by the JIC for a violation thereof. Further, if the candidate is already serving as a judge, like Justice See, he or she is at risk of being disqualified from service during the pendency of the JIC complaint pursuant to Amendment No. 328, § 6.19, to the Alabama Constitution of 1901. In other words, a violation under the `deceiving or misleading' clause of Canon 7(B)(2) can occur, regardless of whether the candidate acted with knowledge of or in reckless disregard to the `deceiving or misleading' nature of the otherwise `true information.' The same type of scenario was present in Brown.

"The Supreme Court in Brown explained that a candidate's liability under the statute before it `is absolute: [The appellant's] election victory must be voided even if the offending statement was made in good faith.....' 456 U.S. at 61, 102 S.Ct. 1523, 71 L.Ed.2d 732. `The chilling effect of such absolute accountability for factual misstatements in the course of political debate is incompatible with the atmosphere of free discussion contemplated by the First Amendment in the context of political campaigns.' Id.

"Here also, as in Brown, the `deceiving or misleading' portion of Canon 7(B)(2) does not allow for erroneous but unintentional or innocent statements. *218 As a result, it has the potential to squelch free speech by inhibiting candidates from speaking for fear of violating the canon and being disciplined. Without an intent element or falsity requirement, candidates risk violating the canon for mistaken but innocent dissemination of `deceiving or misleading' information. Thus, rather than risk violating the canon, the candidate may choose to remain silent rather than exercise his or her freedom of speech. The court finds that such a result is unacceptable under the First Amendment. As stated in Chmura,

"`[a] rationale for judicial elections is that meaningful debate should periodically take place concerning the overall direction of the courts and the role of individual judges in contributing to that direction. Such debate is impossible if judicial candidates are overly fearful of potential discipline for what they say.'
"608 N.W.2d at 42. Based on the foregoing, Canon 7(B)(2) does not appear to afford the `breathing space' required to overcome First Amendment scrutiny. Sullivan, 376 U.S. at 271-272, 84 S.Ct. 710, 11 L.Ed.2d 686."
Butler v. Alabama Judicial Inquiry Comm'n, 111 F.Supp.2d at 1234-36 (footnotes omitted).[5]
We find Canon 7B.(2) to be facially unconstitutional because it is not narrowly tailored to serve the state's compelling interest in protecting the integrity of the judiciary. The language in the latter clause of Canon 7B.(2) prohibiting the dissemination of "true information about a judicial candidate or an opponent that would be deceiving or misleading to a reasonable person" is unconstitutionally overbroad because it has the plain effect of chilling legitimate First Amendment rights.
As we noted above, the court of appeals invited this Court to remedy federal constitutional defects, if any, we may find in Canon 7B.(2) or Canon 2A. Accordingly, similar to what the Michigan Supreme Court did with the canon at issue in Chmura, we narrow Canon 7B.(2) to provide that a candidate for judicial office shall not disseminate demonstrably false information concerning a judicial candidate or an opponent "with `actual malice'that is, with knowledge that it [is] false or with reckless disregard of whether it [is] false or not." New York Times Co. v. Sullivan, 376 U.S. at 280, 84 S.Ct. 710. "[D]emonstrable falsehoods are not protected by the First Amendment in the same manner as truthful statements. But `erroneous statement is inevitable in free debate, and ... it must be protected if the freedoms of expression are to have the "breathing space" that they "need to survive."'" Brown, supra, 456 U.S. at 60, 102 S.Ct. 1523 (citation omitted), quoting New York Times, 376 U.S. at 271-72, 84 S.Ct. 710, quoting, in turn, NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).
Our limiting of Canon 7B.(2) is designed to render the canon narrowly tailored to serve the state's compelling interest in protecting the integrity of the judiciary. "The burden of proving `actual malice' requires [the JIC] to demonstrate with clear and convincing evidence that [Justice See] realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." Bose Corp. v. Consumers Union of United *219 States, Inc., 466 U.S. 485, 511 n. 30, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); New York Times, supra, 376 U.S. at 280, 84 S.Ct. 710. "Authoritative interpretations of the First Amendment guarantees have consistently refused to recognize an exception for any test of truthwhether administered by judges, juries, or administrative officialsand especially one that puts the burden of proving truth on the speaker." New York Times, 376 U.S. at 271, 84 S.Ct. 710.

2. Constitutionality of Canon 2A.

Justice See challenges the constitutionality of Canon 2A. as applied to him. The JIC alleged that Justice See violated Canon 2A. when he, "through his campaign spokesperson, criticized [Judge] Moore's conduct in not explaining his sentences when an explanation by Moore would have been in violation of Canon 3A(6)."
Canon 3A.(6) of the Alabama Canons of Judicial Ethics provides:
"A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court."
The United States Court of Appeals for the Eleventh Circuit has noted that certification "offer[s] the state court the opportunity to interpret or change existing law." See Butler v. Alabama Judicial Inquiry Comm'n, 245 F.3d at 1266 n. 9. We therefore take this opportunity to clarify the scope of Canon 2A.
Canon 2A. of the Alabama Canons of Judicial Ethics provides as follows:
"A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."
Canon 2A. regulates conduct. However, in the setting of political speech at issue in these proceedings, a candidate's conduct with reference to speech by the candidate or the unrepudiated statement of an aide[6] is essentially the candidate's speech and is, therefore, not chargeable under Canon 2A. Hence, Canon 2A. does not apply to any of the matters made the basis of this complaint.
QUESTIONS ADDRESSED; RESPONSE ISSUED.
HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J. concurs specially.
JOHNSTONE, J., concurs in part and dissents in part.
HOUSTON, J., dissents.
MOORE, C.J., and SEE, J., recuse themselves.
LYONS, Justice (concurring specially).
I concur in the holdings of the main opinion abrogating the latter portion of Canon 7B.(2) on the ground that it is unconstitutional on its face and yet saving the earlier portion of 7B.(2) that is grounded in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). I also concur in the holding of the main opinion construing Canon 2A. as inapplicable to the matters made the basis of the complaint against Justice See. I write specially to state that I share the concern expressed by Justice Johnstone with respect *220 to the dichotomy between fact and opinion as it applies to the severed and saved portion of Canon 7B.(2) in the context of this proceeding.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur in the holding declaring facially unconstitutional the clause in Canon 7B.(2) proscribing true but potentially deceiving or misleading information. I likewise concur in the holding that Canon 7B.(2) is unconstitutionally overbroad on its face. I further concur in the holding that Canon 2A. does not apply to the conduct alleged in the complaint filed by JIC against Justice See and the holding that the alleged conduct is not chargeable under Canon 2A. I likewise concur with the rationale for each of these holdings. Finally, while I respectfully dissent from the decision to maintain Canon 7B.(2) with any effect whatsoever, as I will explain, I concur in the holding that, to proceed against Justice See pursuant to Canon 7B.(2) as narrowed by the majority, JIC bears the burden "`to demonstrate with clear and convincing evidence that [Justice See] realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement,' Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 511 n. 30, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); New York Times [Co. v. Sullivan], 376 U.S. [254,] 280, 84 S.Ct. 710 [(1964)]," and I concur in the rationale for this burden.
As I have mentioned, however, I respectfully dissent from the decision to maintain Canon 7B.(2) with any continuing effect at all. I would hold that the clause proscribing true but potentially deceiving or misleading information renders the Canon facially unconstitutional in the entirety.
The case before us exemplifies the hazard of misuse that this Canon poses. The complaint filed by JIC specifies the particular statements JIC claims are false. Principally and essentially, however, the statements are only expressions of opinion, not representations of fact. The important terms in the statements are subject to different interpretations. One set of interpretations expresses one opinion, and another set of interpretations expresses another opinion. The statements are not demonstrably false, but simply debatable, depending on different interpretations of the terms.
Applying Canon 7B.(2) to punish expressions of opinion is just as detrimental to a judicial candidate's freedom of speech as the facially unconstitutional operation of the Canon to proscribe true but potentially deceiving or misleading statements of fact. Statements of opinion are as important in, and indeed as critical to, robust political debate as statements of fact. Thus, even the narrowed version of Canon 7B.(2) is unconstitutional as applied.
Moreover, even if the narrowed Canon were not unconstitutional as applied, nonetheless the narrowed Canon, improved though it may be, presents too much of a practical hazard to the public interest to warrant our maintaining the Canon even in this form. Part of this hazard is that a prosecution by JIC on this Canon or any other automatically disqualifies the judge or justice. This disqualification of a Supreme Court justice can be expected, and indeed calculated, to affect the vote of this Court on particular issues usually determined by a bare majority. This effect on the precedent-setting function of this Court may extend to a large number of cases, considering the staggering volume that this Court decides every year. Thus the misapplication of this Canoneven as narrowednot only wreaks a professional *221 catastrophe on the individual justice prosecuted but also deprives the general public of the vote of the justice whose views the public valued enough to elect.
Canon 7B.(2) in any form is just one more layer of government. Even without it, civil and criminal actions are available to redress the most egregious cases of libel or slander. Moreover, experience suggests that, at least in Alabama, attack advertisements cause their own redress by causing a backlash which usually defeats the attacker in the election. Thus the potential for the misuse of attack advertisements does not warrant the hazards that any version of Canon 7B.(1) poses to free speech.
Therefore, this entire Canon, facially invalid for its inclusion of the proscription against true but potentially deceptive or misleading information, should not survive our declaration to this effect. Rather, the entire issue of whether this Court should undertake to promulgate a Canon governing campaign speech should be reconsidered according to our established protocols for the consideration and formulation of Canons.
HOUSTON, Justice (dissenting).

I.
In a proceeding before the Alabama Court of the Judiciary, a defendant can raise and have decided a constitutional challenge to a judicial canon that the defendant is charged with violating. The procedural mechanisms in place provide the ability to procure a reasonably speedy decision of any federal issue raised. The Constitution of Alabama of 1901 requires that a judge charged with the violation of a canon of judicial ethics be disqualified pending the outcome of the proceedings; however, our oath of office "to support the Constitution of the United States, and the Constitution of the State of Alabama" fully embraces Article VI of the Constitution of the United States ("This Constitution, and the laws of the United States which shall be made in pursuance thereof ..., shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."). Therefore, if the judge can meet the well-defined burden of proof that disqualification with pay for the duration of the proceeding would threaten the judge's federal constitutional rights or Article I, § 35, of the Constitution of Alabama of 1901, then the State constitutional provision requiring disqualification must yield. There have been times when the federal courts have held that the Alabama judicial system could not protect the federal constitutional rights of those who stood before the courts of this State. See Roe v. Alabama, 68 F.3d 404 (11th Cir.1995). Because I recused myself when in that case the United States Court of Appeals for the Eleventh Circuit certified a question of state law to the Supreme Court of Alabama (see Roe v. Mobile County Appointment Bd., 676 So.2d 1206 (Ala.1995)) (Houston, J., Recusal Statement, 1234-42), I will write no more about that case. The Alabama judicial system can adequately and swiftly protect the federal and state constitutional rights of those who stand before the courts of this State, including the Court of the Judiciary.
II.
Question A
"In a proceeding before the Alabama Court of the Judiciary, can a defendant raise and have decided a constitutional challenge to a judicial canon, either at the Court of the Judiciary or through direct review to the Supreme Court or by other means?"
*222 The Supreme Court of Alabama ("Supreme Court") has the constitutional duty of promulgating Canons of Judicial Ethics (Alabama Constitution of 1901) ("Constitution"), Amendment 328, § 6.08(c). The Alabama Judicial Inquiry Commission ("JIC") (Constitution, Amendment 581, § 6.17) and the Court of the Judiciary (Constitution, Amendment 581, § 6.18), have the constitutional duty to enforce Alabama's Canons of Judicial Ethics ("canons"). The Court of the Judiciary is a trial court whose jurisdiction is limited to the trial of complaints filed by the JIC charging a judge or justice with violating one or more of the canons. No one challenges that the Court of the Judiciary has this original exclusive constitutional jurisdiction. Therefore, I contend, and the Court held in Boggan v. Judicial Inquiry Commission, 759 So.2d 550 (Ala.1999), that a constitutional challenge could and should be made in the Court of the Judiciary. Who decides which courts have the power to rule on the constitutionality of statutes or canons? The Constitution gives the Court of the Judiciary the sole power to try a judge or justice for a violation of one or more of the canons; and the Constitution does not prohibit the Court of the Judiciary from deciding constitutional issues involving the canons.[7] In Marbury v. Madison, 5 U.S. (1 Cranch) 137, 179, 2 L.Ed. 60 (1803), in reference to the United States Constitution, the United States Supreme Court wrote:
"Could it be the intention of those who gave this power, to say that in using it the constitution should not be looked into? That a case arising under the constitution should be decided without examining the instrument under which it arises?
"This is too extravagant to be maintained.
"In some cases, then, the Constitution must be looked into by the judges."
I was the author of Boggan, supra, and of Docena Fire District v. Rucker, 564 So.2d 422 (Ala.1990). In Docena, the very statute that would have given the probate court jurisdiction of the issue before it was challenged as being unconstitutional. That distinguishes Docena from Boggan and from the case now at issue. As I have written, no one challenges that the Court of the Judiciary has jurisdiction over the claim filed by the JIC against Justice Harold See, hereinafter referred to as the defendant.
Under Rule 10 of the Rules of the Court of the Judiciary, the Alabama Rules of Civil Procedure ("Ala.R.Civ.P.") and the Alabama Rules of Evidence apply to hearings held by the Court of the Judiciary, except where it would be inappropriate for them to apply or where the Rules of the Court of the Judiciary otherwise provide. Rule 12, Rule 56(b), and Rule 65, Ala. R.Civ.P., are available to a defendant in a trial before the Court of the Judiciary. A defendant can move to dismiss a charge brought against him or her by the JIC on the ground that the charge is based upon a canon that is facially unconstitutional; a defendant can move for a summary judgment on the ground that the canon under which the charge is brought against the defendant is unconstitutional as applied to *223 that defendant; or a defendant can seek temporary injunctive relief pending a resolution on the merits. The Constitution affords a judge or justice "aggrieved by a decision of the Court of the Judiciary [an] appeal to the Supreme Court [of Alabama]." Constitution, Amendment 581, § 6.18(b). If the Court of the Judiciary denied a Rule 12 motion to dismiss alleging that the canon on which the complaint is based is facially unconstitutional, then the defendant could immediately petition the Supreme Court for a writ of mandamus or a writ of prohibition. If the Court of the Judiciary denied the defendant's motion for summary judgment, then the defendant could seek an immediate appeal pursuant to Rule 5, Ala.R.App.P. The Court of the Judiciary's denial of a request for a preliminary injunction under Rule 65 could lead to an immediate appeal as of right, Rule 4(a)(1)(A), Ala.R.App.P. I know of no case in which the Supreme Court of Alabama has decided that a defendant cannot challenge in the Court of the Judiciary by a Rule 12 motion, a motion for summary judgment, a Rule 65 proceeding, or otherwise, the constitutionality of a canon that the defendant is charged with violating. Boggan and In re Sheffield, 465 So.2d 350 (Ala.1984), indicate that such a challenge can be made in the Court of the Judiciary.
This Court has shown that it will not hesitate to reverse a finding by the Court of the Judiciary if such a reversal is necessary to protect a defendant's rights. See In re Sheffield, supra. Although this Court's reasoning in Sheffield did not emphasize the constitutional dimension of the rights at issue, a review of that case leaves no doubt regarding the nature of the Court's concern. Likewise, each justice of the Supreme Court of Alabama takes the following oath before executing the duties of his or her office:
"I ... solemnly swear (or affirm as the case may be) that I will support the Constitution of the United States, and the Constitution of the State of Alabama, so long as I continue a citizen thereof; and that I will faithfully and honestly discharge the duties of my office upon which I am about to enter, to the best of my ability. So help me God."
See Art. XVI, § 279, Constitution of Alabama of 1901. (Emphasis added.) Therefore, this oath is an additional safeguard to protect a defendant's federal and state constitutional rights, as we understand them.
Question B
"If [a defendant can raise and have decided a constitutional challenge to a judicial canon], how do the procedural rules governing the Court of the Judiciary permit speedy decision on federal constitutional issues?"
Rule 7 of the Rules of the Court of the Judiciary ("Rules") provides that dilatory motions are disfavored and that any action that "would interfere with the prompt disposition of the proceedings pending before the court shall be discouraged, and may be avoided by proper order of the court," and Rule 8 provides that the Court of the Judiciary must set a trial of the complaint "as expeditiously as possible." It is presumed that the Court of the Judiciary would act in a diligent and prompt manner on any charge under its consideration.

Question C
"In a proceeding before the Alabama Court of the Judiciary, can that court or a higher court grant, in that proceeding, a stay of the judge's disqualification pending the outcome of that proceeding or the outcome of the federal constitutional challenge posed in that proceeding?"
*224 Amendment 328, § 6.19, of the Constitution, requires the disqualification of a defendant while the charge is pending. However, our oath of office "to support the Constitution of the United States, and the Constitution of the State of Alabama" fully embraces Article VI of the Constitution of the United States ("This Constitution, and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."). Therefore, if a disqualified defendant can meet the well-defined burden of proving that disqualification with pay for the duration of the proceeding would threaten the defendant's federal constitutional rights, then the state constitutional provision requiring disqualification must yield. Likewise, Art. I, § 35, Constitution of Alabama of 1901, provides:
"[T]he sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty, and property, and when the government assumes other functions it is usurpation and oppression."
Therefore, if a defendant can meet the well-defined burden of proving that disqualification with pay for the duration of the proceeding would threaten the defendant's enjoyment of life, liberty, or property during the disqualification, then the state constitutional provision requiring disqualification would be trumped by § 35. See Henderson v. Alabama Power Co., 627 So.2d 878 (Ala.1993).

III.
Having answered the certified questions, I would not prejudge the constitutionality of the canons that the defendant has been charged with violating. However, because the majority of this Court has written to the constitutionality of the canons, I write the following:
Core political speech in the 1994 and 1996 Alabama judicial elections had run amok. Accusations that a judicial candidate was a coconspirator to murder; that another was looking and acting like a skunk; and that one was an adulterer and had engaged in licentious conduct filled the airwaves and the post offices of this State. On Monday, October 28, 1996 (eight days before the 1996 General Election), the Public Broadcasting System ("PBS") broadcast a nationwide television presentation called "Vote For MePolitics in America." That presentation included a segment in which a political consultant, who was supposed to have had input in creating the above-referenced television commercials, was interviewed in 1994 in his offices in New York and Texas and in the office of the Chief Justice of the Alabama Supreme Court. One viewing this segment, styled "The Terminator," might have concluded that political consultants would continue the same kind of political advertisement in judicial races that had been used in 1994 and 1996. As this special writing is filed with the clerk of the Supreme Court, I will file also that videotape copy. (The segment styled "The Terminator" appears at a point about 46 minutes into the tape.)
Because of the felt necessity of the times, Chief Justice Hooper, on November 12, 1996, appointed a Task Force on Judicial Campaign Reform, consisting of the following members of the Judiciary: Hugh Maddox, Chairman; Gorman Houston; John Patterson; Sharon Yates; John Crawley; Jean Brown; Pamela Baschab; William Gordon; Charles Price; Ferrill McRae; Braxton Kittrell; Wayne Thorne; James Hard; Daniel Reynolds; Bernard Harwood; Jerry E. Stokes; Charles Partain; Inge Johnson; P.B. McLauchlin; *225 James T. Gullage; Bobby Aderholt; Samuel Monk; Lyn Stuart; Lewis E. Gosa; Gerald Topazi; and Ralph Grider.
Chief Justice Hooper charged the Task Force as follows:
"I have long been a supporter of the judiciary being elected by the people. I remain strong in that position.
"The problem I see is that there are no rules by which the participants must be guided. If boxing must be guided by Queensbury Rules, surely those people that seek office to the time honored position of the judiciary must be guided by fair and decent rules. Campaign ads that are obviously hitting below the belt must be stopped."
On December 2, 1996, the Alabama Supreme Court's Advisory Committee on Judicial Ethics recommended that the Supreme Court modify existing Canon 7 to include the following provision:
"During the course of any campaign for nomination or election to judicial office, a candidate, by any means, shall not do any of the following:
"(a) Post, publish, broadcast, transmit, circulate, or distribute information concerning a judicial candidate or an opponent, either knowing the information to be false or with reckless disregard of whether or not such information was false, or if true, that would be deceiving or misleading to a reasonable person."
The Task Force appointed by the Chief Justice recommended changes to this proposal, and ultimately, through the work of the Task Force, the Advisory Committee, and the Supreme Court, Canon 7, as it now appears, including Canon 7B.(2), was promulgated by an order of August 14, 1997, and with an effective date of January 1, 1998. The defendant dissented from the adoption of a portion of Canon 7B.(2).
The Task Force, recognizing the delicate balance required to protect free speech of judicial candidates and recognizing the need to dispel the disdain in which the Alabama judiciary had come to be held as a result of negative judicial campaigns, recommended to the Court "Voluntary Guidelines" for judicial candidates to sign. Those guidelines contained the following:
"I shall not post, publish, broadcast, transmit, circulate, or distribute false or misleading statements concerning myself or my opponents."
The Task Force felt that candidates might be willing to voluntarily waive First Amendment rights for the good of the Alabama Judicial System. It is my understanding that most candidates for judicial offices in 1998 and 2000 agreed to govern their campaign conduct in accord with these voluntary guidelines. There is no facial violation of the First Amendment to the Constitution of the United States in prohibiting a candidate from publishing or broadcasting false information about an opponent that the candidate knows is false or in prohibiting a candidate from publishing or broadcasting false information with reckless disregard for whether the information is false. New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The United States Supreme Court, in New York Times, defined "actual malice" as "knowledge that [the information is] false or ... reckless disregard of whether it [is] false." 376 U.S. at 279-80, 84 S.Ct. 710. Count One (charges 1-3) charges the defendant with a violation of this portion of Canon 7B.(2).
I have questions about publishing "true" information about a judicial candidate that would be deceiving or misleading to a reasonable person. See Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). The "reasonable person" standard is applied in other canons. *226 In re Sheffield, 465 So.2d at 357, the following appears, "We find only that Canon 3C(1) mandated recusal because a reasonable person could question the judge's impartiality. Therefore, we find that recusal was required...." Count Two (charges 4-6) does not allege that the information the defendant was alleged to have disseminated was true, but merely that it was disseminated "knowing that the information would be deceiving or misleading to a reasonable person." I would not be so quick to hold that the second aspect of Canon 7B.(2) is facially unconstitutional. However, even if this portion of Canon 7B.(2) is unconstitutional, that fact would affect only Count Two.
Canon 2A. is not facially unconstitutional, and I cannot say, from the record before us, that Canon 2A. is unconstitutional as applied in this case. I am not persuaded by the reasoning of the majority.

IV.
In my nonjudicial life, I try to follow the principles stated in Stephen Covey's book The 7 Habits of Highly Effective People. To begin with the end in mind is one of those 7 habits. This is something a judge should not do in the process of judging, except in the most extraordinary cases. After studying the complaint; the television commercial and the printed material allegedly disseminated by the defendant's campaign; the briefs filed in the Court of Appeals for the Eleventh Circuit and those filed in this Court; the actions of the Court of the Judiciary in the 29 cases that have come before that court; and the action of this Court in response to the seven appeals from the Court of the Judiciary and appeals from disciplinary proceedings of the Alabama State Bar, I believe that this is one of those extraordinary cases, because of the adverse impact that it will have on the functioning of the Supreme Court. From the record before us and from my study of the materials mentioned above, I do not believe the defendant would be removed from office even if he is found guilty of all the charges filed against him.[8]
If the proceeding continues in the Court of the Judiciary, the defendant must be suspended during the pendency of those charges, unless a suspension would violate the United States Constitution or the Alabama Constitution. The defendant is a division chief, and a great deal of the Supreme Court's judicial work is handled in divisions. His suspension would adversely affect the proper, orderly functioning of this Court during the pendency of the proceeding in the Court of the Judiciary.
I am not prejudging how I would vote if the defendant's case is appealed to this Court. If that happened, I would study the evidence presented before the Court of the Judiciary and the applicable law, and I would base my decision solely on that law and evidence, instead of the limited record now before us.
Appendix
(Excerpt from the district court's opinion)
"Second, Canon 7(B)(2)'s prohibition also appears to be overbroad for the *227 same reasons articulated in Iowa Right To Life Committee, Inc. v. Williams, 187 F.3d 963 (1999). In Williams, which involved an appeal from a preliminary injunction, the Third Circuit examined, in part, the constitutionality of an Iowa campaign administrative code rule (`rule') which limited expenditures for `express advocacy' of candidates made independently of the candidate and his or her campaign. Id. at 968-69. The portion of the rule at issue provided that `express advocacy' constitutes communication that:
"`b. When taken as a whole and with limited reference to external events such as the proximity to the election, could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s)... because:
"`(1) The electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and
"`(2) Reasonable minds could not differ as to whether it encourages action to elect or defeat one or more clearly identified candidate(s) ... or encourages some other kind of action.'

"Id. at 969 (quoting Iowa Admin.Code r. 351-4.100(1)(b)).
"The Iowa Right To Life Committee, Inc. (`IRLC'), which publishes `voter guides' containing information about the political positions of elected candidates (id. at 965), argued that the rule's definition of `express advocacy' chilled its First Amendment rights `to public discussion of issues.' Id. at 968. According to IRLC, the chilling effect occurred because the rule's definition of `express advocacy' was `unconstitutionally overbroad and swe[pt] in a substantial amount of protected speech, creating uncertainty.' Id. In arguing that the definition was overbroad, IRLC focused on the language in the rule pertaining to `what reasonable people or reasonable minds would understand by the communication.' Id. at 969. IRLC contended that, under this aspect of the definition, `[t]here [was] no way for IRLC to know ahead of time whether its speech does or does not meet the definition and therefore subjects them to government reporting and disclosure requirements.' Id. According to the IRLC, `[t]he possible intent and effect attributed to the speech creates uncertainty.' Id.

"In affirming the lower court's decision, the Third Circuit held `that the State's definition of express advocacy created uncertainty and potentially chills discussion of public issues' and, thus, `there is a likelihood of success on the merits.' Id. at 970. The Third Circuit explained that, where an interpretation of a definition of a statutory or regulatory phrase involves `[q]uestions of intent and effect,' the speaker cannot `safely assume how anything he might say would be understood by others.' Id. at 969 (citing Buckley, 424 U.S. at 43, 96 S.Ct. 612, 46 L.Ed.2d 659). `A speaker should not be put "wholly at the mercy of the varied understanding of his hearers and consequently of whatever inference may be drawn as to his intent and meaning."` Id. (quoting Buckley, 424 U.S. at 43, 96 S.Ct. 612, 46 L.Ed.2d 659). Thus, `[w]hen a definition depends on the meaning others attribute to the speech, there is no security for free discussion because the definition "blankets with uncertainty whatever may be said," requiring "the speaker to hedge and trim." `Id.

"Accordingly, the Third Circuit held that the district court did not abuse its *228 discretion in granting a preliminary injunction in favor of IRLC. Id. at 970, 96 S.Ct. 612. Specifically, the Third Circuit held that the district court did not err in finding that the IRLC `would likely succeed on the merits in its action to have the regulation declared unconstitutionally overbroad because it chills legitimate First Amendment rights to public discussion of issues.' Id. at 966, 970, 96 S.Ct. 612.
"The court recognizes that the rule at issue in Williams regulated a different aspect of political speech than the Canon at issue in this case. Nevertheless, the court finds that the reasoning in Williams is pertinent to the issues presented in this case. Here, in order for a candidate to know whether he is disseminating `true' but `misleading or deceiving' information, as prohibited by Canon 7(B)(2), he or she is at the mercy of what a `reasonable person' would think. The candidate must go inside the mind of a `reasonable person' to ascertain what inferences a reasonable person would or could draw from the candidate's advertisement.
"Determining who represents a `reasonable person' is just one of the problems evidenced by Canon 7(B)(2). Even if it were clear as to who is a `reasonable person' further difficulties arise in ascertaining when the dissemination of `true information' should be deemed `deceiving or misleading' by that `reasonable person.' Could not even reasonable, fair-minded individuals differ and reach diametrical conclusions as to what types of information, although technically true, are `deceiving or misleading'? What is `deceiving or misleading' to one reasonable person may not necessarily be `deceiving or misleading' to another reasonable person. In other words, a judicial candidate cannot know ahead of time by reading Canon 7(B)(2) what types of information may fall within Canon 7(B)(2)'s `deceiving or misleading' proscriptions. Such broad proscriptions appear to be exactly the kind prohibited by the First Amendment to the United States Constitution. See Buckley, 997 F.2d at 230 (`A statute that forbids, or can fairly be read to forbid, privileged speech is not saved by the fact that it also forbids unprivileged speech and could in application be confined to the latter.'); see also Beshear v. Butt, 863 F.Supp. 913, 916-17 (E.D.Ark.1994) (finding that an Arkansas judicial canon that prohibited a judicial candidate from `announc[ing] views on disputed legal or political issues' was `substantially overbroad and vague' and noting that `[t]ruly, a judicial candidate striving diligently to conduct a campaign that is consistent with the canons, without the benefit of any specific standards as a guide, would in all likelihood refrain from expressing his views, while permissible under the First Amendment, in order to avoid the risk of a probable cause hearing likely to result in a public reprimand....'). Consequently, the court finds that there exists a substantial likelihood of success on the merits on Plaintiffs' facial challenge to Canon 7(B)(2).
"Third, neither Party has suggested any method by which Canon 7(B)(2) could be read narrowly so as to comport with the First Amendment. The lack of argument on this point is understandable. No Alabama court has interpreted this canon; thus, the court cannot look to state law for guidance as to the construction of the `misleading or deceiving' clause of Canon 7(B)(2). Moreover, while a federal court cannot interpret a state law so as to bind a state court, see Buckley v. Illinois Judicial Inquiry Bd., 997 F.2d 224, 229 (7th Cir.1993), this *229 court nonetheless can conceive of no way, without rewriting the canon, to limit the construction and narrow the canon's proscriptions. However, the court emphasizes that it is not at liberty to rewrite the canon, even if it desired to do so. Id. at 230. As stated by the Seventh Circuit in Buckley, it was not the court's `proper business to patch up' the state judicial canon. Id. The Seventh Circuit continued: `A "savings" construction ... would cast us in the role of a Council of Revision empowered to make such changes in a proposed enactment, state or federal, as might be necessary to render it constitutional. We are not authorized to play such a role.' Id. Therefore, once again, the court finds that Plaintiffs are likely to succeed on the merits on their challenge to Canon 7(B)(2).
"Fourth and finally, the court emphasizes that time and time again the Supreme Court of the United States has reaffirmed the importance of the First Amendment to the electoral process. In numerous cases, the Supreme Court has strictly scrutinized and invalidated laws imposing restrictions on the conduct of campaigns. For example, the Supreme Court has struck down statutory restrictions on the amount of money a candidate may spend campaigning for office. See Buckley, 424 U.S. at 19, 96 S.Ct. 612, 46 L.Ed.2d 659. (`A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached.'). Similarly, in Federal Election Comm'n v. National Conservative Political Action Comm., the Supreme Court struck down a statute limiting the amount of money an independent political committee can spend on behalf of a candidate seeking election. See 470 U.S. 480, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985); see also Brown, 456 U.S. at 45, 102 S.Ct. 1523, 71 L.Ed.2d 732, discussed supra. In these decisions, and many others like them, the Supreme Court has relied on the strong presumption that First Amendment protections have little to do with the caliber and quality of the speech involved, but rather, the First Amendment is more concerned with the broad protection of the speech itself in order to encourage a robust exchange of ideas in political campaigns for elected office. Therefore, it appears that, short of using known or reckless falsehoods, candidates for judicial office may safely voice their opinions without shedding the cloak of protection provided under the First Amendment. See, e.g., Sullivan, 376 U.S. at 272-73, 84 S.Ct. 710, 11 L.Ed.2d 686 (`Where judicial officers are involved, this Court has held that concern for the dignity and reputation of the courts does not justify the punishment as criminal contempt of criticism of the judge or his decision. This is true even though the utterance contains "half-truths" and "misinformation."`) (internal citation omitted) (quoting Pennekamp v. Florida, 328 U.S. 331, 342-343 n. 5, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946)). Accordingly, the court, again, finds that Plaintiffs have established a substantial likelihood of success on the merits on their claim.
"In sum, based on the foregoing, the court finds that Plaintiffs have satisfied the first element for obtaining a temporary restraining order. Plaintiffs may likely succeed on a facial challenge to Canon 7(B)(2) on the ground that Canon 7(B)(2), as written, is overbroad and, thus, chills free speech. As a result, Plaintiffs are likely to succeed on the *230 merits in their action to have Canon 7(B)(2) declared unconstitutionally overbroad because it chills legitimate First Amendment rights."
Butler v. Alabama Judicial Inquiry Comm'n, 111 F.Supp.2d at 1236-39 (footnotes omitted).
NOTES
[1] See Ala. Const. of 1901, Amendment No. 328, § 6.08(c).
[2] Joining Justice See as plaintiffs in the action were Judge W. Thomas Gaither, a former district judge and circuit judge in the Third Judicial Circuit of Alabama, who "is a potential future candidate for a judgeship," and Robert Butler, a registered voter who "participates as a voter in judicial elections in Alabama." Neither Justice See nor the other plaintiffs filed an answer to the JIC's complaint with the COJ.
[3] Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
[4] The court of appeals stated:

"Our phrasing of these certified questions is meant to restrict, in no way, the Alabama Supreme Court's response to the questions or its analysis of the state law problems posed by this case. See City of Marietta v. CSX Transp., Inc., 196 F.3d 1300, 1309 (11th Cir.1999); Edmonds v. Bronner, 864 F.2d 752, 753-54 applicable state law; and the questions are a guide. The more information that the state supreme court can provide to us, the better we will be able to resolve the abstention problem and possibly the merits. To assist the Alabama Supreme Court in its consideration of this case, the briefs of the parties and amici curiae will accompany this certification." 245 F.3d at 1266.
[5] In an appendix to this opinion, we quote further from the district court's discussion of the constitutional infirmities of Canon 7B.(2).
[6] Canon 7B.(3) of the Alabama Canons of Judicial Ethics makes a candidate accountable for the content of any statement by his campaign.
[7] The Supreme Court of Alabama is empowered to adopt "rules governing the procedures of the court of the judiciary" (§ 6.18(c), Amendment No. 581, Constitution of Alabama of 1901). It could be argued that this authority empowers the Supreme Court to restrict the power of the Court of the Judiciary in deciding constitutional issues. I disagree with that; however, even if it did, the Supreme Court has not in the rules of procedure it has promulgated for the Court of the Judiciary restricted the Court of the Judiciary's power to decide constitutional issues.
[8] The closest case I have found is Dowling v. Alabama State Bar, 539 So.2d 149 (Ala.1988). In that case, a candidate for district judge was found guilty of failure to comply with DR 2-101(A) and DR 1-102(A)(4), of the Alabama Code of Professional Responsibility, by making false misrepresentations with knowledge of their falsity or with reckless disregard of the truth, in a political advertisement. The Alabama State Bar Disciplinary Board held that the appropriate discipline was public censure. This Court affirmed the conviction and the sentence. The United States Supreme Court denied certiorari review. 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989).