# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-4078

_____

| | | |
|---|---|---|
| Iowa Right to Life Committee, Inc.; Iowa Right to Life State Political Action Committee, | * * * * | |
| Appellees, | * * | |
| v. | * * | |
| | * | Appeal from the United States |
| Kay Williams, in her official | * | District Court for the Southern |
| capacity as Executive Director of the | * | District of Iowa. |
| Iowa Ethics and Campaign Disclosure | * | |
| Board; Bernard McKinley; James | * | |
| Albert; Gwen Brooks; Marie Thayer; | * | |
| Michael Forrest, in their official | * | |
| capacities as members of the Iowa | * | |
| Ethics and Campaign Disclosure Board; | * | |
| Thomas Miller, in his official capacity | * | |
| as Iowa Attorney General; John | * | |
| Sarcone, in his official capacity as | * | |
| County Attorney for Polk County, | * | |
| Iowa, and as a representative of the | * | |
| class of County Attorneys in the | * | |
| State of Iowa, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted:  June 17, 1999

Filed:  August 13, 1999

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and KYLE,[1] District Judge.

_____

BEAM, Circuit Judge.

The State of Iowa (Iowa, or the State) appeals from the grant of a preliminary injunction enjoining the enforcement of one provision of Iowa's Campaign Disclosure-Income Tax Check-off Act, Iowa Code § 56.13(1), which establishes reporting requirements for independent expenditures, and a related provision of the Iowa Administrative Code, Iowa Admin. Code r. 351-4.100(1)(b), that defines express advocacy. Iowa Right to Life State Political Action Committee (IRLSPAC) and Iowa Right to Life Committee, Inc. (IRLC), maintain that the provisions are unconstitutional and therefore the grant of preliminary injunctive relief was appropriate. We affirm.

## I. BACKGROUND

IRLSPAC and IRLC are affiliated organizations that have as one of their purposes, political speech. They attempt to highlight, support, and inform the public about issues relevant to their interests, and the positions and records of candidates on those issues. IRLSPAC makes direct contributions to candidates and independently devotes money and resources to advocate the election or defeat of particular candidates. In the 1996 Iowa elections, IRLSPAC produced several mailings that encouraged people to vote for certain candidates because they supported issues of concern to IRLSPAC. The mailings contained the admonition to "vote for" a specific candidate. The mailings were reported to the Iowa Ethics and Campaign Disclosure Board (the Board), and otherwise complied with campaign and election laws.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

IRLC, on the other hand, serves a more purely informative role. One of IRLC's primary expenditures of money is for the publication of "voter guides" that articulate the voting records and public policy positions of various candidates. IRLC proposes to continue publishing voter guides that will contain no language such as "vote for," "elect," or any other express words of advocacy for the election or defeat of a clearly identifiable candidate.

In July 1998, IRLSPAC and IRLC together challenged four Iowa campaign and election statutes and several related Iowa administrative regulations, under 42 U.S.C. § 1983, as violative of their rights protected by the First and Fourteenth Amendments. They sought a preliminary injunction, which the district court[2] granted. The State appeals the district court's decision only as to Iowa Code § 56.13(1), and Iowa Administrative Code r. 351-4.100(1)(b).

The district court found that IRLSPAC's constitutional challenge to section 56.13(1), regulating independent expenditures that expressly advocate the election or defeat of a candidate, is likely to be successful on the merits because it is not narrowly drawn to serve a compelling state interest. As to rule 351-4.100(1)(b), which defines express advocacy, the district court concluded that IRLC would likely succeed on the merits in its action to have the regulation declared unconstitutionally overbroad because it chills legitimate First Amendment rights to public discussion of issues.

## II.    DISCUSSION

We review a grant of a preliminary injunction for abuse of discretion, see National Credit Union Admin. Bd. v. Johnson, 133 F.3d 1097, 1101 (8th Cir. 1998), and consider four factors: (1) probability of success on the merits; (2) threat of

---

[2]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa, presiding.

irreparable harm; (3) the balance between this harm and potential harm to others if relief is granted; and (4) the public interest. See Kirkeby v. Furness, 52 F.3d 772, 774 (8th Cir. 1995); Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). We consider first whether the district court abused its discretion by granting a preliminary injunction for the statutory provision, section 56.13(1), regulating independent expenditures.

As indicated, IRLSPAC makes independent expenditures, such as direct mailings, that expressly advocate the election or defeat of candidates. Section 56.13(1) of the Iowa Code regulates those independent expenditures. It provides that when an organization makes an independent expenditure expressly advocating the election or defeat of a candidate, the organization must notify the Board and the candidate within twenty-four hours. This notification gives the candidate knowledge of the independent expenditure. The section then requires the candidate to essentially make one of two choices: (1) file a statement of disavowal including an indication of the "corrective action" taken within seventy-two hours, or (2) do nothing and have the independent expenditure presumed to be "approved" by the candidate and deemed an expenditure by the candidate.[3]

---

[3]Section 56.13 provides:

Independent Expenditures

1. Action involving a contribution or expenditure which must be reported under this chapter and which is taken by any person, candidate's committee or political committee on behalf of a candidate, if known and approved by the candidate, shall be deemed action by the candidate and reported by the candidate's committee. It shall be presumed that a candidate approves the action if the candidate had knowledge of it and failed to file a statement of disavowal with the commissioner or board and take corrective action within seventy-two hours of the action. A person, candidate's committee or political committee taking such action

-4-

The Constitution protects independent expression of views through independent expenditures, as "core" First Amendment activity. See Colorado Republican Fed. Campaign Comm. v. Federal Election Comm'n, 518 U.S. 604, 616 (1996). Thus, restrictions on independent spending requires more compelling justification than restrictions on ordinary contributions. See Federal Election Comm'n v. Massachusetts Citizens for Life, Inc., 479 U.S. 238, 259-60 (1986). Indeed, governmental regulations that "'suppress, disadvantage, or impose differential burdens upon speech because of its content'" are subjected to the "'most exacting scrutiny'" and thereby must be narrowly tailored to a compelling state interest. Day v. Holahan, 34 F.3d 1356, 1361 (8th Cir. 1994) (quoting Turner Broad. Sys., Inc. v. Federal Communications Comm'n, 512 U.S. 622, 642 (1994)).

In Day, we found that a content-based restriction exists when a regulation "singles out particular political speech–that which advocates the defeat of a candidate and/or supports the election of her opponents–for negative treatment." Id. at 1360.

---

independently of that candidate's committee shall notify that candidate's committee in writing within twenty-four hours of taking the action. The notification shall provide that candidate's committee with the cost of the promotion at fair market value. A copy of the notification shall be sent to the board.

Any person who makes expenditures or incurs indebtedness, other than incidental expenses incurred in performing volunteer work, in support or opposition of a candidate for public office shall notify the appropriate committee and provide necessary information for disclosure reports.

Iowa Code § 56.13(1).

The State argues various narrow interpretations of the provision. However, we have found no narrowing interpretation by any Iowa court, see Kirkeby, 52 F.3d at 775, and therefore give a plain meaning to the provision.

Section 56.13(1) also singles out this particular kind of speech–that which expressly advocates the election or defeat of a candidate–for negative treatment. The State not only disputes that the speech is subjected to negative treatment, but also justifies the regulation as narrowly tailored to a compelling state interest. IRLSPAC argues that the negative treatment arises from what section 56.13(1) requires of a candidate. According to the IRLSPAC, the candidate must either disparage the independent expenditure through a statement of disavowal and corrective action, or have the independent expenditure presumed to be their own–i.e. coordinated.

The State contends that a statement of disavowal and of the corrective action taken is not a disparagement or a statement of disagreement with the independent expenditure, but merely an expression that there was no prior knowledge of the independent expenditure. We cannot agree with the State's spin on this requirement, particularly in the framework of our "cherished right to political speech." Federal Election Comm'n v. Christian Action Network, Inc., 110 F.3d 1049, 1051 (4th Cir. 1997). Disavowal is "a disowning; repudiation; denial." Random House Webster's Unabridged Dictionary 561 (2d ed. 1997). To the ordinary reader, the implications of requiring a candidate to file a statement of disavowal along with a statement of corrective action taken against an independent expenditure, has a strong negative connotation. Cf. Day, 34 F.3d at 1362 ("[T]he statute's negative impact on political speech must be a violation of the First Amendment rights of those who wish to make the independent expenditures at issue.").

Conversely, if a candidate fails to file a statement of disavowal and corrective action, then the independent expenditure is presumed approved and deemed an expenditure by the candidate. The negative impact IRLSPAC imports to this is that an entirely independent expenditure is automatically presumed to be a coordinated expenditure, eliminating the independent nature of the speech and thus diminishing its value. We agree. The Supreme Court in Colorado Republican, considered "whether the Government may conclusively deem independent party expenditures to be

coordinated," Colorado Republican, 518 U.S. at 625, and concluded that simply calling an independent expenditure a "coordinated expenditure," or presuming such, cannot make it so. See id. at 621-22.

There is a fundamental constitutional difference between independent and coordinated expenditures. The difference is that independent expenditures, by their nature, do not involve prearrangement or coordination. And without the prearranged or coordinated nature of expenditures, the danger that the expenditure is given as a quid pro quo for improper commitments is alleviated. See id. at 614-15. Based upon what section 56.13(1) requires candidates to do, we agree with the district court that it is a content-based restriction that must be "narrowly drawn to serve a compelling state interest." Day, 34 F.3d at 1361.

The State seeks to justify section 56.13(1) as serving three alleged compelling state interests. The State's first attempt is to show that the provision is narrowly tailored to deter actual corruption and avoid the appearance of corruption. In view of the provision's treatment of independent expenditures, we do not think it is narrowly tailored to this asserted interest, at least absent convincing evidence or findings that the statute is necessary to combat a substantial danger of corruption of the electoral system. See Colorado Republican, 518 U.S. at 617-18; cf. Russell v. Burris, 146 F.3d 563, 569 (8th Cir. 1998) (requiring credible evidence of actual undue influence or corruption). The State neither asserts such evidence nor points us to such a finding.

The State advances two additional state interests: providing information to the electorate about candidate funding and therefore a likely direction of future performance, and the gathering of data necessary to detect violations of campaign and election laws. We are not persuaded, since a portion of the statute, not challenged by the IRLSPAC, already requires that those making independent expenditures send notice to the Board, thus serving the data gathering and electoral information interests. Therefore, we agree with the district court that IRLSPAC's challenge to section

-7-

56.13(1) is likely to succeed on the merits. The State has not carried its burden of showing that the regulation is narrowly tailored to a compelling state interest.

The State also appeals the preliminary injunction against enforcement of administrative code rule 351-4.100(1)(b), containing a definition of express advocacy. The definition is relevant to IRLC's interests because express advocacy is subject to tighter regulation than pure issue advocacy. Failure to comply with the regulations established for express advocacy can subject the speaker to more onerous consequences. As indicated, IRLC plans to expend money and resources to produce voter guides that contain no express words of advocacy for the election or defeat of a clearly identifiable candidate. IRLC argues that rule 351-4.100(1)(b) acts to chill its legitimate First Amendment rights to public discussion of issues because the State's definition of express advocacy is unconstitutionally overbroad and sweeps in a substantial amount of protected speech, creating uncertainty.

"Discussion of public issues and debate on the qualifications of candidates are integral to . . . our Constitution. The First Amendment affords the broadest protection to such political expression in order 'to assure (the) unfettered interchange of ideas . . . .'" Buckley v. Valeo, 424 U.S. 1, 14 (1976) (quoting Roth v. United States, 354 U.S. 476, 484 (1957)). This does not mean that government cannot regulate at all or subject such speech to some amount of scrutiny. It does mean, however, that in this area "'so closely touching our most precious freedoms,'" precision of regulation must be the touchstone. Id. at 41 (quoting NAACP v. Button, 371 U.S. 415, 438 (1963)). Ambiguity and uncertainty in a regulation compel a speaker "'to hedge and trim,'" and can invalidate the regulation. Id. at 43 (quoting Thomas v. Collins, 323 U.S. 516, 535 (1945)).

Administrative code rule 351-4.100(1) regulates political speech and therefore is subject to precision of regulation on pain of invalidation under the First Amendment. Subsection (a) provides a definition of express advocacy which tracks the language

approved by Buckley.  424 U.S. at 44 & n.52; see Iowa Admin. Code r. 351-4.100(1)(a) (finding express advocacy includes statements such as "vote for the Governor," "re-elect your State Senator," etc.).  IRLC does not challenge this definition, but instead challenges subsection (b), which provides that express advocacy means communication that:

> b. When taken as a whole and with limited reference to external events such as the proximity to the election, could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s) . . . because:
> (1) The electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and
> (2) Reasonable minds could not differ as to whether it encourages action to elect or defeat one or more clearly identified candidate(s) . . . or encourages some other kind of action.

Iowa Admin. Code r. 351-4.100(1)(b).

To avoid uncertainty, and therefore invalidation of a regulation of political speech, the Supreme Court in Buckley, established a bright-line test.  See Buckley, 424 U.S. at 43-44; see also Christian Action Network, 110 F.3d at 1051.  The Supreme Court's focus was on whether the communication contains "express" or "explicit" words of advocacy for the election or defeat of a candidate.  See Buckley, 424 U.S. at 43-44.

In contrast, the focus of the challenged definition is on what reasonable people or reasonable minds would understand by the communication.  The definition does not require express words of advocacy.  IRLC argues that under the challenged definition, an organization like IRLC could avoid all express words of advocacy, such as in informational voter guides, and still be uncertain as to whether the communication could be viewed as express advocacy under the regulation.  There is no way for IRLC to know ahead of time whether its speech does or does not meet the definition and

therefore subjects them to government reporting and disclosure requirements. The possible intent and effect attributed to the speech creates uncertainty.

Questions of intent and effect, however, are to be excluded from the analysis, since a speaker, in such circumstances, could not safely assume how anything he might say would be understood by others. See id. at 43. A speaker should not be put "'wholly at the mercy of the varied understanding of his hearers and consequently of whatever inference may be drawn as to his intent and meaning.'" Id. (quoting Thomas, 323 U.S. at 535). When a definition depends on the meaning others attribute to the speech, there is no security for free discussion because the definition "'blankets with uncertainty whatever may be said,'" requiring "'the speaker to hedge and trim.'" Id.

The Supreme Court has made clear that a "finding of 'express advocacy' depend[s] upon the use of language such as 'vote for,' 'elect,' 'support,' etc." Massachusetts Citizens for Life, 479 U.S. at 249 (quoting Buckley, 424 U.S. at 44, n.52). While Buckley did not provide an exclusive list, there is no doubt that the communication must contain express language of advocacy with an exhortation to elect or defeat a candidate. See id.; see also Federal Election Comm'n v. Furgatch, 807 F.2d 857, 864 (9th Cir. 1987) ("[S]peech may only be termed 'advocacy' if it presents a clear plea for action, and thus speech that is merely informative is not covered by the Act."). Because we find that the State's definition of express advocacy creates uncertainty and potentially chills discussion of public issues, there is a likelihood of success on the merits.

The State is concerned that persons or organizations will surreptitiously advocate the election or defeat of a named candidate but avoid legitimate government regulation and reprisal by simply omitting "magic words" of advocacy. We understand the State's concern. However, absent the bright-line limitation in Buckley, "the distinction between issue discussion (in the context of electoral politics) and candidate advocacy would be sufficiently indistinct that the right of citizens to engage in the vigorous

-10-

discussion of issues of public interest without fear of official reprisal would be intolerably chilled." <u>Christian Action Network</u>, 110 F.3d at 1051.

As to the remaining preliminary injunction factors, we view the balance clearly in favor of issuing the injunction. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976). Furthermore, the potential harm to independent expression and certainty in public discussion of issues is great and the public interest favors protecting core First Amendment freedoms. Therefore, the district court did not abuse its discretion by granting a preliminary injunction.

## III.   CONCLUSION

For the foregoing reasons we affirm the district court's grant of preliminary injunctive relief.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-