IOWA RIGHT TO LIFE COMMITTEE, INC., Plaintiff,

v.

Megan TOOKER, in her official capacity as Iowa Ethics and Campaign Disclosure Board Executive Director; and James Albert, John Walsh, Patricia Harper, Gerald Sullivan, Saima Zafar, Carole Tillotson, in their official capacities as Iowa Ethics and Campaign Disclosure Board Members, Defendants.

4:10–cv–416

United States District Court, S.D. Iowa, Central Division.

Signed September 28, 2015

Adam C. Gregg, Attorney At Law, Johnston, IA, Brian P. Rickert, Sean P. Moore, Brown Winick Graves Gross Baskerville & Schoenebaum PLC, Des Moines, IA, James Bopp, Jr., Jeffrey P. Gallant, Richard E. Coleson, The Bopp Law Firm, Terre Haute, IN, for Plaintiff.

Jeffrey S. Thompson, Meghan L. Gavin, Attorney General of Iowa, Des Moines, IA, for Defendants.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ROBERT W. PRATT, Judge, UNITED STATES DISTRICT COURT

Before the Court are Cross Motions for Summary Judgment. Defendants collectively filed a Motion for Summary Judgment on June 15, 2015. Clerk's No. 81. Plaintiff Iowa Right to Life Committee ("IRTL") filed a resistance on July 15, 2015. Clerk's No. 85. IRTL also filed a Motion for Summary Judgment on June 15, 2015. Clerk's No. 82. Defendants filed a resistance on July 15, 2015. Clerk's No. 84. IRTL replied on July 30, 2015. Clerk's No. 88. The matters are fully submitted.[1]

## I. FACTS AND PROCEDURAL HISTORY

Following the Supreme Court's decision in *Citizens United v. Federal Election Commission* [*"FEC"*], 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010), the Iowa legislature enacted laws that legalized independent expenditures [2] for corporations and other legal entities, subject to certain disclosure requirements. *See* Iowa Code

---

1. The Court notes that Plaintiff requested oral argument, but the Court has concluded that oral argument would not aid in the resolution of the Motions.

2. " 'Independent expenditure' means one or more expenditures in excess of one thousand dollars in the aggregate for a communication that expressly advocates the nomination, election, or defeat of a clearly identified candidate or the passage or defeat of a ballot issue that is made without the prior approval or coordination with a candidate, candidate's committee, or ballot issue committee." Iowa Code § 68A.404(1).

§ 68A.404. IRTL, a non-stock, nonprofit Iowa corporation, filed its original complaint in this case on September 7, 2010, raising four challenges to the constitutionality of the newly enacted laws under the First and Fourteenth Amendments. *See* Clerk's No. 1. This Court disposed of all four counts on summary judgment, and IRTL appealed to the Eighth Circuit. *See Iowa Right to Life Comm., Inc. v. Tooker,* 795 F.Supp.2d 852 (S.D.Iowa 2011) (hereinafter *"IRTL I"*). The Eighth Circuit affirmed in part, reversed in part, and remanded two issues that are now before this Court. *Iowa Right to Life Comm., Inc. v. Tooker,* 717 F.3d 576 (8th Cir.2013), *cert. denied,* —— U.S. ——, 134 S.Ct. 1787, 188 L.Ed.2d 757 (2014) (hereinafter *"IRTL III"*). Below is a summary of the four counts originally raised by IRTL and their respective outcomes on appeal.

First, IRTL claimed that Iowa Code sections 68A.102(18) and 68A.402(9) unconstitutionally imposed political action committee ("PAC") or permanent-organization status on groups that made independent expenditures, such as IRTL, even when those groups' major purpose was not the nomination or election of candidates. *See Iowa Right to Life Comm., Inc. v. Tooker,* 844 F.Supp.2d 946, 948 (S.D.Iowa 2012) (hereinafter *IRTL II*). This Court certified two questions to the Iowa Supreme Court regarding the interpretation of the two Iowa statutory sections, and, after receiving an answer, concluded that "IRTL's claim that it could be classified—or regulated—as a political committee or a perma-

nent organization simply by making independent expenditures fails as a matter of law." *Id.* at 950. Accordingly, this Court also concluded that IRTL did not have standing to challenge the definitions of "political committee" and "permanent organization." *Id.* Those conclusions were affirmed by the Eighth Circuit on appeal. *See IRTL III,* 717 F.3d at 587.

Second, IRTL challenged several reporting and disclosure requirements, arguing that they imposed PAC-like burdens on organizations seeking to make independent expenditures. *See IRTL I,* 795 F.Supp.2d at 863. Specifically, Iowa law required organizations making independent expenditures to: (1) file a disclosure form within 48 hours of making an independent expenditure in excess of $750[3]; (2) file subsequent reports up to four times a year; (3) file a supplemental report if the organization made an independent expenditure of more than $1,000 during an election year; and (4) file a termination report within 30 days of deciding to no longer make independent expenditures. *Id.* at 864. This Court granted summary judgment to Defendants on this count, concluding that all four requirements survived the "exacting scrutiny" standard set forth in *Citizens United* because they "greatly enhance[ ] the transparency of corporate expenditures while imposing only [a] reasonable burden." *Id.* at 866. On appeal, the Eighth Circuit agreed in part. The Eighth Circuit held that Iowa's requirement that organizations file certain disclosures[4] within 48 hours of making an

---

**3.** The Iowa legislature later amended the law and raised that amount to $1,000. *See* Clerk's No. 82–8 at 5.

**4.** The required disclosures include:
"a. Identification of the individuals or persons filing the statement. b. Description of the position advocated by the individuals or persons with regard to the clearly identified candidate or ballot issue. c. Identification of the candidate or ballot issue benefited by

the independent expenditure. d. The dates on which the expenditure or expenditures took place or will take place. e. Description of the nature of the action taken that resulted in the expenditure or expenditures. f. The fair market value of the expenditure or expenditures. g. A certification by an officer representing the person, if the person is other than an individual or individuals, that the board of directors, executive council, or similar organizational leadership body ex-

independent expenditure had a "substantial relation to Iowa's sufficiently important interest in keeping the public informed." *IRTL III*, 717 F.3d at 595–96. But the Eighth Circuit concluded that the remaining three requirements—ongoing reports, supplemental reports, and termination reports—were unconstitutional burdens on free speech. *Id.* at 597–601.

Third, IRTL argued that Iowa Code section 68A.503, which bans direct corporate contributions to political candidates, was unconstitutional in light of *Citizens United*. *IRTL I*, 795 F.Supp.2d at 867–68. This Court granted summary judgment to Defendants, concluding that the ban was constitutional because it advanced the State's interest in the prevention of corruption. *Id.* at 869. The Eighth Circuit affirmed that decision. *See IRTL III*, 717 F.3d at 601.

Fourth, IRTL argued that Iowa unconstitutionally forbade corporations, but not other legal entities, from making independent expenditures unless the board of directors of the corporation expressly authorized the expenditures in advance within the same calendar year (the "board-approval requirement") and an officer of the corporation certified that such an approval had occurred (the "certification requirement"). *See IRTL I*, 795 F.Supp.2d at 870. IRTL argued that the board-approval and certification requirements were an unconstitutional restriction on free speech under the First Amendment and also violated its equal protection rights under the Fourteenth Amendment. *See id.* This Court concluded that IRTL did not have standing to bring the First or Fourteenth Amendment claims, because it had not shown that it was injured. *Id.* at 872. This Court also concluded that IRTL had not shown it was similarly situated to other organizations that weren't subject to the requirements, and, therefore, IRTL's claim that corporations were unconstitutionally targeted failed as a matter of law. *Id.* at 873. The Eighth Circuit held that, based on the statutory language, the board-approval requirement did not target corporations because it required *all* entities making independent expenditures to obtain approval from a board or similar governing body. *See IRTL III*, 717 F.3d at 605. But, the Eighth Circuit concluded that the certification requirement did unconstitutionally target corporations, because only corporations were specifically required to certify that an expenditure had board approval. *Id.* Since that decision, the Iowa legislature amended the certification requirement to encompass all legal entities, not just corporations. *See* Clerk's No. 82–6 at 5. Importantly, the Eighth Circuit also reversed this Court's conclusion that IRTL lacked standing to challenge the board-approval and certification requirements under the First and Fourteenth Amendment and remanded the case to this Court to consider those issues. *See IRTL III*, 717 F.3d at 604–05.

Thus, on remand, the sole issues before this Court are: (1) whether the board-approval and certification requirements unconstitutionally burden IRTL's free speech rights under the First Amendment; and (2) whether the board-approval and certification requirements violate IRTL's right to equal protection under the Fourteenth Amendment. IRTL makes both facial and as applied arguments as to the constitutionality of the regulations. The parties agree that no relevant factual dis-

pressly authorized the independent expenditure or use of treasury funds for the independent expenditure by resolution or other affirmative action within the calendar year when the independent expenditure was incurred."
Iowa Code § 68A.404(5).

putes exist and that this case presents purely legal questions proper for resolution by summary judgment. *See* Clerk's Nos. 81–2 at 5, 82–6 at 7.

## II. CHALLENGED STATUTORY SECTIONS

IRTL challenges the constitutionality of Iowa Code sections 68A.404(2)(a), (b), and (5)(g). The laws require all legal entities to gain majority approval for independent expenditures from the entities' board or similar governing body within the same calendar year as the expenditure, and then certify that such an approval took place as party of an already-existing independent-expenditure reporting process. The text of the challenged statutes states:

> 2.a. A person,[5] other than an individual or individuals, shall not make an independent expenditure or disburse funds from its treasury to pay for, in whole or in part, an independent expenditure made by another person without the authorization of a majority of the person's board of directors, executive council, or similar organizational leadership body of the use of treasury funds for an independent expenditure involving a candidate or ballot issue committee. Such authorization must occur in the same calendar year in which the independent expenditure is incurred.
>
> b. Such authorization shall expressly provide whether the board of directors, executive council, or similar organizational leadership body authorizes one or more independent expenditures that expressly advocate the nomination or election of a candidate or passage of a ballot issue or authorizes one or more independent expenditures that expressly advocate the defeat of a candidate or ballot issue.

. . .

> 5.g. The independent expenditure statement shall contain all of the following information: A certification by an officer representing the person, if the person is other than an individual or individuals, that the board of directors, executive council, or similar organizational leadership body expressly authorized the independent expenditure or use of treasury funds for the independent expenditure by resolution or other affirmative action within the calendar year when the independent expenditure was incurred.

## III. STANDARD FOR SUMMARY JUDGMENT

■ Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 1).

■ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Id.* at 323, 106 S.Ct. 2548. If the moving party has carried its bur-

---

**5.** " 'Person' means, without limitation, any individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, labor union, or any other legal entity." Iowa Code § 68A.102(17).

den, the nonmoving party must then go beyond its original pleadings and designate specific facts showing that there remains a genuine issue of material fact that needs to be resolved by a trial. *See* Fed. R. Civ. P. 56(e)(2). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir.2004).

 In the presence of competing cross motions for summary judgment, a court must keep in mind that summary judgment is not a paper trial. Therefore, a "district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). Neither does filing cross-motions for summary judgment mean the parties have waived their right to trial. *See Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir.1983) ("[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits.") (citations omitted). "Cross motions simply require [a court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 170 (1st Cir.2004) (quoting *Wightman v. Springfield Terminal Ry.*, 100 F.3d 228, 230 (1st Cir.1996)). In this matter, then, each motion will be "evaluat-ed independently to determine whether there exists a genuine dispute of material fact and whether the movant is entitled to judgment as a matter of law." *St. Luke's Methodist Hosp. v. Thompson*, 182 F.Supp.2d 765, 769 (N.D.Iowa 2001).

### IV. LAW AND ANALYSIS

 The First Amendment of the United States Constitution is applicable to the States through the Fourteenth Amendment and prohibits the enactment of laws "abridging the freedom of speech." U.S. Const., amend. I. "[T]he First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 223, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971)). "Independent expenditures are indisputably political speech, and any restrictions on those expenditures strike 'at the core of our electoral process and of the First Amendment freedoms.'" *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir.2012) (quoting *Buckley v. Valeo*, 424 U.S. 1, 39, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)). "[P]olitical speech does not lose First Amendment protection 'simply because its source is a corporation.'" *Citizens United*, 558 U.S. at 342, 130 S.Ct. 876 (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 784, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978)).

 The parties disagree about what level of scrutiny should be applied to the regulations at issue. In the political speech context, *Citizens United* separated regulations into two categories with different levels of scrutiny applying to each. Laws that ban or restrict political speech based on its content or the speaker are subject to strict scrutiny and must be narrowly tailored to meet a compelling state

interest. *See id.* at 340, 130 S.Ct. 876. In contrast, disclaimer and disclosure requirements that burden the ability to speak but "impose no ceiling on campaign-related activities and do not prevent anyone from speaking," are subject to "exacting scrutiny," which requires a "substantial relation" between the disclosure requirement and a "sufficiently important" government interest. *Id.* at 366–67, 130 S.Ct. 876 (internal quotations and citations omitted).

■■■ IRTL argues that the challenged statutes should be subject to strict scrutiny for three main reasons: (1) they are an unconstitutional constraint on the right of association; (2) they are presumptively invalid prior restraints on speech; and (3) they are presumptively invalid content-based restrictions on political speech. *See* Clerk's No. 82–6 at 8–11. IRTL also argues that the fact the statutes are content-based implicates its Fourteenth Amendment right to equal protection because Iowa treats corporate political speech different from other types of speech. *See id.* at 13. Defendants argue that the board-approval and certification requirements are content-neutral regulations that are more akin to the disclosure requirements that were upheld in *Citizens United* under the exacting scrutiny standard. Clerk's No. 81–2 at 10. For the following reasons, the Court concludes that the board-approval and certification requirements are most properly analyzed under the exacting scrutiny standard, and that they are not a violation of the constitutional rights of IRTL or any legal entity in Iowa.

## A. *Right of Association*

■■■ IRTL first argues that the board-approval requirement violates its First Amendment right of association by attempting to regulate its internal procedures. "[F]reedom to associate with others for the common advancement of polit-

ical beliefs and ideas is a form of orderly group activity protected by the First and Fourteenth Amendments." *Cousins v. Wigoda,* 419 U.S. 477, 487, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975) (internal quotation omitted). The government may not infringe upon this right by "interfer[ing] with the internal organization or affairs" of a particular group. *Roberts v. U.S. Jaycees,* 468 U.S. 609, 623, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

IRTL compares this case to *Eu,* where the Supreme Court concluded that several regulations California placed on political parties were unconstitutional. 489 U.S. at 232, 109 S.Ct. 1013. Specifically, *Eu* found that the political parties' right of association was violated because state statutes: (1) dictated the size and composition of the state central committees; (2) provided rules governing the selection and removal of committee members; (3) fixed the maximum term of office for the chair of the state central committee; (4) required that the chair rotate between citizens of northern and southern California; (5) specified the time and place of committee meetings; and (6) limited the dues parties could impose on members. *Id.* at 218, 109 S.Ct. 1013. Applying strict scrutiny, the Supreme Court concluded that the State's asserted justifications for the laws—preserving the integrity of the electoral process, democratic management of the parties' internal affairs, and preventing regional friction—were not compelling. *Id.* at 232–33, 109 S.Ct. 1013.

Defendants argue that this case is distinguishable from *Eu* because the regulations at issue are minimal compared to the regulations imposed by the state of California, and do not constitute a burden on IRTL's right of association. The Court agrees. The regulations in *Eu* went to the core of those organizations' daily operations. The board-approval and certifica-

tion requirements do not dictate anything about the internal structure or operation of the legal entities they regulate. They do not prevent any entity from supporting a political candidate or issue of its choosing. In addition, the regulations provide ample flexibility with regard to the timing and method legal entities may use to obtain approval for independent expenditures. *See* Iowa Code § 68A.404 (explaining that the authorization may occur by "resolution or other affirmative action," and may occur anytime within the calendar year before the expenditure).

IRTL also cites *American Federation of Labor & Congress of Industrial Organizations v. Federal Election Commission*, 333 F.3d 168, 177 (D.C.Cir.2003), for the proposition that "extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." IRTL argues that the board-approval requirement renders their organization less effective because "forcing IRTL to call a meeting and secure authorization before speaking reduces the effectiveness of the speech." Clerk's No. 82-6 at 9. The Court is sensitive to this concern, especially as it may apply to expenditure decisions made in the months or weeks leading up to a general election. But the board-approval requirement is generously flexible with its timing and approval requirements. Entities have an entire calendar year to gain approval. Further, the statute does not place onerous regulations on how the approval must be obtained, how specific the approval must be, or how often approval occurs. The law simply requires that the board or similar body approve expenditures that "expressly advocate the nomination or election of a candidate or passage of a ballot issue." Iowa Code § 68A.404(2)(b). Notably, it does not require that a separate meeting be held to gain approval for each individual expenditure, or even that the board mem-

bers be physically present to give their approval. In addition, it allows boards or other bodies to approve expenditures by "resolution or other affirmative action," leaving endless options for an entity to choose the approval method that works best. Iowa Code § 68A.404(5)(g). With the benefit of the statute's flexibility and the advantages of modern technology, the Court does not foresee that the board-approval requirement will have a meaningful impact on legal entities' ability to participate in spontaneous political speech. Accordingly, because the Court concludes that the board-approval requirement does not impact the right of association for IRTL or any legal entity, it is not subject to strict scrutiny on that basis.

### B. *Prior Restraint*

 Next, IRTL argues that the board-approval requirement functions as a prior restraint on speech in violation of the First Amendment. The First Amendment is implicated if a restraint on speech places "unbridled discretion in the hands of a government official or agency" to determine whether certain speech will be allowed. *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). "The relevant question is whether the challenged regulation authorizes suppression of speech in advance of its expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 795 n. 5, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

IRTL argues that the board-approval requirement is a prior restraint because it essentially requires legal entities to obtain a "ticket" to speak, much like the licensing schemes that have been held unconstitutional by the Supreme Court in the past. *See Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) (finding an unconstitutional prior restraint where licenses to use a city theatre were issued based on "the apprais-

al of facts, the exercise of judgment, and the formation of an opinion" by public officials); *Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147, 153, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (" '[W]e have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places.' ") (quoting *Kunz v. New York,* 340 U.S. 290, 293–94, 71 S.Ct. 312, 95 L.Ed. 280 (1951)). But IRTL overlooks one key difference between the board-approval requirement and those licensing schemes. Here, there is no act of discretion by any government employee or official that grants or denies legal entities permission to speak. Any "ticket" that must be obtained comes from the internal structure of the legal entity itself, in the form of majority approval from a board or similar governing body. *See* Iowa Code § 68A.404(2)(a). The board-approval requirement places no restrictions on the type or amount of speech an entity may engage in, nor does it limit the issues or candidates an entity may support. The entity itself retains the ability to decide when, where, and how to speak. Furthermore, entities have an entire calendar year with which to obtain permission for their independent expenditures.[6]

The board-approval requirement and accompanying certification requirement are also distinguishable from the regulations that *Citizens United* found to be the equivalent of a prior restraint. There, entities wishing to make independent expenditures were "subject to separate rules for 33 different types of political speech." *Citizens United,* 558 U.S. at 334, 130 S.Ct. 876. The FEC had promulgated "568 pages of

regulations, 1,278 pages of explanations and justifications for those regulations, and 1,771 advisory opinions" on the topic of campaign finance. *Id.* The Supreme Court thus concluded that although prospective speakers were "not compelled by law to seek an advisory opinion from the FEC before the speech takes place," "[a]s a practical matter ... given the complexity of the regulations and the deference courts show to administrative determinations, a speaker who wants to avoid threats of criminal liability and the heavy costs of defending against FEC enforcement must ask a governmental agency for prior permission to speak." *Id.* at 335, 130 S.Ct. 876. Here, the entities subject to the board-approval requirement are already acclimated to following and interpreting state regulations regarding their daily operations. *See* Iowa Code §§ 486–504c (regulating business entities). The challenged regulations are straightforward and easy to understand; thus they do not create a constructive prior restraint as did those in *Citizens United.* Any restraint on speech that results from the board-approval and certification requirements would be a result of the will of the legal entity's own governing body–not as the result of a judgment call by government officials, or because the entity was so paralyzed by over-regulation that it chose not to speak so as to avoid penalty. Accordingly, the regulations do not function as prior restraints on speech, and are not subject to strict scrutiny on that basis.

### C. Content–Based Restriction

 Having concluded that the regulations do not impinge upon the right to association, nor do they constitute a prior

---

**6.** Defendants additionally argue that the statute does not prevent a legal entity from making an independent expenditure and then gaining the necessary board approval after the fact. However, that position is clearly undermined by the plain language of Iowa Code § 68A.404(2)(a), which states "[a] person ... shall not make an independent expenditure ... without the authorization of a majority of the person's board of directors."

restraint on speech, the Court must next consider IRTL's argument that they are content-based regulations that unconstitutionally restrict speech. Content-based restrictions on speech are presumptively invalid, and subject to strict scrutiny. *U.S. v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). "[T]he principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). Generally, "laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based," while "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Id.* at 643, 114 S.Ct. 2445. IRTL argues that the board-approval and certification requirements are content-based because they target "particular political speech," specifically, speech that "expressly advocates the election or defeat of a candidate." Clerk's No. 82–6 at 11. Approval and certification are also required for independent expenditures made in support of or against "a ballot issue." Iowa Code § 68A.404(2)(b).

IRTL cites *Day v. Holahan*, 34 F.3d 1356 (8th Cir.1994), and *Iowa Right to Life Committee, Inc. v. Williams*, 187 F.3d 963 (8th Cir.1999), in support of its position that the regulations are content-based. In *Day*, when an independent expenditure was made in support of or against a particular candidate, the candidate's opponent would have their own independent expenditure limit raised, or, in some cases, would be paid a public subsidy equal to one-half of the independent expenditure.

34 F.3d at 1359. The Eighth Circuit concluded that the law was content-based because it "singles out particular political speech—that which advocates the defeat of a candidate and/or supports the election of her opponents—for negative treatment that the state applies to no other variety of speech." *Id.* at 1361. In *Williams*, an Iowa law required an organization making an independent expenditure to notify the Iowa Ethics and Campaign Disclosure Board as well as the candidate for whom the expenditure was made within twenty-four hours. 187 F.3d at 966. At that time, the candidate was required to either: "(1) file a statement of disavowal including an indication of the 'corrective action' taken within seventy-two hours, or (2) do nothing and have the independent expenditure presumed to be 'approved' by the candidate and deemed an expenditure by the candidate." *Id.* *Williams* relied on *Day* in concluding that the regulation was content-based because it singled out a particular kind of speech for negative treatment, specifically, a candidate's option to disavow an expenditure. *Id.* at 967 (citing *Day*, 34 F.3d at 1360).

Importantly, both *Day* and *Williams* were decided long before *Citizens United*. In *Citizens United*, two laws within the Bipartisan Campaign Reform Act of 2002 ("BCRA") were challenged by Citizens United, a nonprofit corporation. 558 U.S. at 318–19, 130 S.Ct. 876. The first law prohibited corporations and unions from using general treasury funds to make independent expenditures for speech characterized as an "electioneering communication" or for speech that expressly advocated the election or defeat of a candidate. *Id.* The Supreme Court characterized the law as "an outright ban [on speech], backed by criminal sanctions," and explained that the law's purpose was to "silence entities whose voices the Government deems to be suspect."

*Id.* at 337, 339, 130 S.Ct. 876. The Court further explained that "[t]he purpose and effect of this law is to prevent corporations, including small and nonprofit corporations, from presenting both facts and opinions to the public." *Id.* at 310, 355, 130 S.Ct. 876. The Court concluded that banning independent expenditures based on the speaker's corporate identity was similar to regulating speech based on its content, and thus applied strict scrutiny. *See id.* at 340, 130 S.Ct. 876 ("Speech restrictions based on the identity of the speaker are all too often simply a means to control content."). The Court found that neither an antidistortion interest nor an interest in preventing quid pro quo corruption, or the appearance of such corruption, were compelling government interests as they related to independent expenditures. *Id.* at 352, 356, 130 S.Ct. 876. The Court also rejected the Government's contention that it had an interest in protecting dissenting shareholders from funding corporate political speech they disagreed with, concluding that any evidence of corporate abuse could be "corrected by shareholders 'through the procedures of corporate democracy.'" *Id.* at 361–62, 130 S.Ct. 876 (quoting *Bellotti,* 435 U.S. at 794, 98 S.Ct. 1407). Accordingly, the Court concluded that the ban on independent expenditures by corporations and unions violated the First Amendment. *Id.* at 362, 130 S.Ct. 876.

In contrast, the Court upheld two disclaimer and disclosure requirements related to independent expenditures. The disclaimer law required certain information to be placed on "televised electioneering communications funded by anyone other than a candidate." *Id.* at 365, 130 S.Ct. 876. Any television advertisement was required to: (1) identify what individual or entity was responsible for the content of the advertising; (2) state that the communication was not authorized by any candidate or candidate committee; and (3) display the

name and address or website of the person or entity that funded the advertisement. *Id.* at 366, 130 S.Ct. 876. The disclosure law required any person spending more than $10,000 on electioneering communications within a calendar year to file a statement with the FEC that would: (1) identify the person making the expenditure; (2) state the amount of the expenditure; (3) identify the election to which the communication was directed; and (4) list the names of certain contributors. *Id.* The Supreme Court concluded that these disclaimer and disclosure requirements were not subject to strict scrutiny because they "may burden the ability to speak but they impose no ceiling on campaign-related activities and do not prevent anyone from speaking." *Id.* (internal quotations and citations omitted). Instead, the Court applied exacting scrutiny, which requires a "substantial relation between the disclosure requirement and a sufficiently important government interest." *Id.* at 366–67, 130 S.Ct. 876 (citing *Buckley,* 424 U.S. at 64, 66, 96 S.Ct. 612 and *McConnell v. Federal Election Com'n,* 540 U.S. 93, 231–32, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003)). The Court concluded that the television disclaimers were substantially related to the sufficiently important government interests of "provid[ing] the electorate with information" and "insur[ing] that the voters are fully informed about the person or group who is speaking." *Id.* at 368, 130 S.Ct. 876 (internal quotations and citations omitted). The Court also found that the FEC disclosures were justified because of the same "informational interest," that is that "the public has an interest in knowing who is speaking about a candidate shortly before an election." *Id.* at 369, 130 S.Ct. 876. The Court further explained that "[t]he First Amendment protects political speech; and disclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way. This transparen-

cy enables the electorate to make informed decisions and give proper weight to different speakers and messages." *Id.* at 371, 130 S.Ct. 876.

At first glance, the disclaimer and disclosure requirements in *Citizens United* appear to fit the *Day* and *Williams* test for content-based laws because they place additional burdens on speech that expressly advocates the election or defeat of a candidate. *See Williams*, 187 F.3d at 967 ("[A] content-based restriction exists when a regulation 'singles out particular political speech—that which advocates the defeat of a candidate and/or supports the election of her opponents—for negative treatment.'") (quoting *Day*, 34 F.3d at 1360). Nonetheless, the Supreme Court concluded that the requirements were not subject to strict scrutiny because, unlike the independent expenditure ban, the disclaimer and disclosure requirements "may burden the ability to speak but they impose no ceiling on campaign-related activities and do not prevent anyone from speaking." *Citizens United*, 558 U.S. at 366, 130 S.Ct. 876 (internal quotations and citations omitted).

In this way, *Citizens United* recognizes the unique nature of campaign and election-related law. Under Plaintiff's argument, every law that touches upon campaign finance, even viewpoint-neutral laws, would be subject to strict scrutiny; such a conclusion is not compatible with Supreme Court precedent. *See id.* at 319, 130 S.Ct. 876 ("The Government may regulate corporate political speech through disclaimer and disclosure requirements, but it may not suppress that speech altogether."); *Id.* at 422, 130 S.Ct. 876 ("The election context is distinctive in many ways, and the Court, of course, is right that the First Amendment closely guards political speech. But in this context, too, the authority of legislatures to enact viewpoint-neutral regulations based on content and identity is well settled.") (Stevens, J. concurring in part

and dissenting in part); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997) ("[I]t is also clear that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."); *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) ("Consequently, to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest, as petitioner suggests, would tie the hands of States seeking to assure that elections are operated equitably and efficiently.").

Thus, applying *Citizens United* to the facts of this case, the controlling question is whether the board-approval and certification requirements are egregious burdens on First Amendment rights, like the ban on independent expenditures to which the Supreme Court applied strict scrutiny, or whether they are more like the disclaimer and disclosure requirements that, although seemingly content-based, do not actually ban any speech and are subject only to exacting scrutiny. For the reasons stated below, the Court concludes that both the board-approval and certification requirements are subject to exacting scrutiny.

### 1. *Board-approval requirement.*

■ The board-approval requirement does not ban speech, nor is it designed to prevent corporations and other legal entities from presenting their viewpoints to the public. The requirement does not dictate how much an entity may speak or prevent any type of entity from speaking. One key difference between the expenditure ban and the disclaimer and disclosure requirements in *Citizen's United* is that the ban applied only to corporations and unions while the disclaimer and disclosure

requirements applied to all individuals and legal entities. 558 U.S. at 310, 366, 130 S.Ct. 876. Plaintiff argues that the board-approval and certification requirements in this case only apply to legal entities and are, therefore, unconstitutionally speaker-based like the corporate ban in *Citizens United.*

The Court recognizes that it is impermissible, in the campaign-finance area, to treat corporations, and presumably other legal entities, differently from individuals. *Id.* at 342, 130 S.Ct. 876 ("[P]olitical speech does not lose First Amendment protection simply because its source is a corporation." (internal quotation omitted)). But under Iowa law, all "persons," defined as both individuals and legal entities, are required to identify themselves as part of the independent-expenditure reporting statement. *See* Iowa Code §§ 68A.404(3), (5)(a)–(h). The board-approval requirement simply ensures that the identification requirement is met for legal entities—whose identity is undeniably more complex than that of an individual. Legal entities are comprised of multiple individuals bound together by state law. Without the board-approval requirement, the public would not know if an independent expenditure was made by a CEO as a favor to a friend, a board member who had a particular interest in a political issue, or as a statement of support from the entity itself. Requiring legal entities to properly identify themselves as independent expenders is not the equivalent of negatively targeting speech by legal entities—it merely assures that they adhere to the same regulations required of individuals. Thus, the board-approval requirement more closely resembles the disclaimer and disclosure requirements to which *Citizens United* applied exacting scrutiny. *See id.* at 366, 130 S.Ct. 876 (stating that although the disclaimer and disclosure requirements "may burden the ability to speak ... they 'impose no ceiling on campaign-related activities and do not

prevent anyone from speaking.'" (internal quotations and citations omitted)).

Under exacting scrutiny, the board-approval and certification requirements are constitutional only if there is a "substantial relation [between the regulations] and a sufficiently important government interest." *Citizens United,* 558 U.S. at 366–67, 130 S.Ct. 876. Here, Defendants assert that the state interest in the board-approval requirement is to ensure that the speaker is actually the entity and not just an individual with access to the entity's treasury. *See* Clerk's Nos. 84 at 8–9, 81-2 at 11. The Court views the board-approval requirement as a logical extension of *Citizens United*—now that corporations and other legal entities can make independent expenditures, the public has a right to know that it is actually the corporation or entity making the expenditure. When an individual makes an independent expenditure, there is no question about the origin of that contribution. The public could logically conclude that an individual made such an expenditure under the individual's own free will. In the context of legal entities, however, no such guarantee exists.

Having opened the door to independent expenditures by corporations and other legal entities, the State now has a substantial interest in protecting the integrity of the political system by ensuring that the expenditures actually originate with the legal entity and not just an individual with access to the legal entity's bank account seeking to advance his or her own political agenda. Such a requirement supports the integrity and transparency of the election system, as well as the public's interest in knowing who is speaking about candidates and issues. Indeed, *Citizens United* upheld disclosure requirements that, in part, mandated disclosure of the identity of the entity or individual making the expenditure, because the "public has an interest in

knowing who is speaking about a candidate." *Citizens United*, 558 U.S. at 369, 130 S.Ct. 876.

IRTL argues that legal entities likely already have internal procedures to deal with individuals who may make political contributions on behalf of the entity without permission. That may be true, but any internal remedy may not be satisfactory as it relates to the public's informational interest; an expenditure may be made, and an election may occur, before the legal entity even realizes what happened. IRTL also argues that there is no informational interest in the public knowing the internal decision-making processes of legal entities. While Plaintiff may be correct, that is not the informational interest that is at stake here. Indeed, the statute does not even require disclosure of what process led to the approval of the expenditure. *See* Iowa Code § 68A.404(5)(a)–(h). Instead, the public interest lies in knowing that the entity itself backs the expenditure. The Court concludes that there is a substantial relation between the board-approval requirement and the public's right to information about exactly who is speaking about particular issues or candidates. The board-approval requirement is not unconstitutional under the First Amendment.

### 2. *Certification requirement.*

■ The Court reaches the same conclusion about the challenged certification requirement. It is a natural extension of the board-approval requirement, and merely confirms that the board-approval process has occurred. In practice, it will require legal entities to enter one additional line of text onto the independent-expenditure-reporting form that has already been upheld as constitutional by the Eighth Circuit. *See IRTL III*, 717 F.3d at 595–96; Iowa Code § 68A.404(5)(a)–(h). Thus, exacting scrutiny applies to the certification requirement, as well. Like the board-approval requirement, the certification requirement is substantially related to the public's interest in knowing who is speaking about candidates and issues before an election. The certification requirement is not unconstitutional under the First Amendment.

### D. *Equal Protection*

■ Plaintiff also argues that the board-approval and certification requirements are unconstitutional under the Equal Protection Clause.

[U]nder the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. And it may not select which issues are worth discussing or debating in public facilities. There is an equality of status in the field of ideas, and government must afford all points of view an equal opportunity to be heard. Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say. Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone.

*Police Dep't. of City of Chicago v. Mosley*, 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

■ IRTL's Equal Protection claim fails as a matter of law. As discussed above, the challenged laws do not treat speech by legal entities any differently than speech by an individual. They do not discriminate against any viewpoint nor is there evidence that Iowa enacted them in order to suppress the speech of legal entities. Instead, the laws impose the same identification requirement on legal entities as is required of individuals.

## V. CONCLUSION

For the reasons discussed above, the board-approval and certification requirements are both facially constitutional and constitutional as applied to IRTL. Plaintiff's Motion for Summary Judgment (Clerk's No. 82) is **DENIED**. Defendants' Motion for Summary Judgment (Clerk's No. 81) is **GRANTED**.

IT IS SO ORDERED.